IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

05 10947 JLT

JEANETTE ANDERSON, Representative of the ESTATE OF ESTHER LEE WRIGHT,

Plaintiff,

v.

MERCK & CO., INC., and John and Jane Does, as Sales Representatives for MERCK & CO, INC.,

Defendants.

CIVIL ACTION No. ____________

MAGISTRATE JUDGE RBC

RECEIPT # 64086
AMOUNT $ 250
SUMMONS ISSUED N/A
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. FDWA
DATE 5/9/05

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1446, defendant Merck & Co, Inc. ("Merck") files this Notice of Removal and states:

1. Merck is the single named defendant[1] in an action commenced against it by the plaintiff, Jeanette Anderson, representative of the Estate of Esther Lee Wright, pending in Middlesex County Superior Court in the Commonwealth of Massachusetts, captioned Jeanette Anderson, Representative of the Estate of Esther Lee Wright v. Merck & Co, Inc., Civil Action No. 05-0367 (the "Superior Court action"). True copies of all process, pleadings and orders served on Merck in the Superior Court action are attached hereto as Exhibit A and specifically incorporated herein.

2. In her Complaint, Plaintiff Jeanette Anderson alleges that she is a resident of Massachusetts. Defendant Merck is a corporation organized under the laws of the State of New Jersey with a principal place of business at One Merck Drive, Whitehouse Station, New Jersey. There is, therefore, complete diversity of citizenship.

[1] The Complaint also lists unnamed Merck sales representatives as "John and Jane Doe" defendants. Federal law provides, however, that "[f]or purposes of removal . . . , the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a).

3. The Plaintiff brings a wrongful death action for compensatory damages on the part of Plaintiff's Decedent Esther Lee Wright, claiming that Wright "was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death." Complaint ¶ 30. Accordingly, Merck suggests that the matter in controversy in the state action will exceed the sum or value of $75,000, exclusive of interest and costs.

4. Merck was served with a summons and a copy of plaintiff's Complaint and Demand for Jury Trial on April 20, 2005. Consequently, this notice is timely under 28 U.S.C. § 1446(b).

5. This action is one of which this Court has jurisdiction pursuant to 28 U.S.C. § 1332 and that may be removed to this Court by Merck.

MERCK & CO., INC.
By its attorneys:

James J. Dillon (BBO# 124660)
Bradley E. Abruzzi (BBO# 651516)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02110-2600
(617) 832-1000

Dated: May 9, 2005

**CERTIFICATE OF SERVICE**

I certify that a true copy of the foregoing NOTICE OF REMOVAL was served on May 9, 2005 by regular U.S. Mail, upon:

David C. Strouss
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA 02110
**Counsel for Plaintiff Jeanette Anderson, Representative of the Estate of Esther Lee Wright**

**CT CORPORATION**
A WoltersKluwer Company

**Service of Process Transmittal**
04/20/2005
Log Number 510146365

**TO:** Debra A Bollwage
Merck & Co., Inc.
One Merck Drive
Whitehouse Station, NJ, 08889-0100

**RE:** **Process Served in Massachusetts**

**FOR:** Merck & Co., Inc. (Domestic State: NJ)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Jeanette Anderson, Representative of the Estate of Esther Lee Wright, Pltfs. Vs John and Jane Does, including Merck & Co., Inc., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | Middlesex County Superior Court House, MA<br>Case # 05-00367-L2 |
| **NATURE OF ACTION:** | Product Liability Litigation - Manufacturing Defect - As a result of consuming VIOXX, plaintiff's decedent suffered from an Acute Myocardial Infarction, which substantially contributed to her death on February 8, 2002. |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Boston, MA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/20/2005 at 15:31 |
| **APPEARANCE OR ANSWER DUE:** | Within 20 Days |
| **ATTORNEY(S) / SENDER(S):** | Allyson S. Hauck<br>Thorton & Naumes, LLP<br>100 Summer Street<br>30th Floor<br>Boston, MA, 02110<br>617-720-1333 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via Fed Ex Priority Overnight, 790496037079<br>*Client's reference number#519047798999* |
| **SIGNED:** | C T Corporation System |
| **PER:** | Dahriena Mitchell |
| **ADDRESS:** | 101 Federal Street<br>Boston, MA, 02110 |
| **TELEPHONE:** | 617-757-6403 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action.

**TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: — TORT — MOTOR VEHICLE TORT — CONTRACT — EQUITABLE RELIEF — OTHER**

**COMMONWEALTH OF MASSACHUSETTS**

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

MIDDLESEX, ss
[seal]

No. 05-00367-L2

JEANETTE ANDERSON, Representative of the Estate of Esther Lee Wright, Plaintiff(s)

v.

MERCK & CO., INC., et al., Defendant(s)

## SUMMONS

To the above-named Defendant: **MERCK & CO., INC. and John and Jane Does, as Sales Representatives for MERCK & CO., INC.** c/o CT Corporation 101 Federal St Boston MA

You are hereby summoned and required to serve upon THORNTON & NAUMES, LLP plaintiff's attorney, whose address is 100 Summer St., 30th Fl., Boston, MA 02110 *, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at 40 Thorndike St., Cambridge, MA 02141 either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at the 14th day of APRIL, in the year of our Lord 2005

* TRACKING ORDER, COMPLAINT and FIRST AMENDED COMPLAINT

Edward J. Sullivan
Clerk

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

**Commonwealth of Massachusetts**
**County of Middlesex**
**The Superior Court**

CIVIL DOCKET# **MICV2005-00367-L2**

RE: **Anderson, Representative Of The Estate Of Esther Lee Wright v Merck & Company, Inc. et al**

TO:David C Strouss, Esquire
Thornton & Naumes
100 Summer Street
30th floor
Boston, MA 02110

**TRACKING ORDER - A TRACK**

You are hereby notified that this case is on the average (A) track as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 05/03/2005 |
| Response to the complaint filed (also see MRCP 12) | 07/02/2005 |
| All motions under MRCP 12, 19, and 20 filed | 07/02/2005 |
| All motions under MRCP 15 filed | 04/28/2006 |
| All discovery requests and depositions completed | 03/24/2007 |
| All motions under MRCP 56 served and heard | 05/23/2007 |
| Final pre-trial conference held and firm trial date set | 09/20/2007 |
| Case disposed | 02/02/2008 |

The final pre-trial deadline is **not the scheduled date of the conference**. You will be notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session **L2** sitting **in Cv CrtRm 2 (Lowell), Middlesex Superior Court.**

Dated: 02/09/2005

Edward J. Sullivan
Clerk of the Courts

BY: Brian Burke
Assistant Clerk

Location: Cv CrtRm 2 (Lowell)
Telephone: 978-453-0201 EXT 231

**Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130**

Check website for status of case: http://ma-trialcourts.org/tcic
cvdtraca_2.wpd 2681079 inidoc01 dipacee

**COMMONWEALTH OF MASSACHUSETTS**

**MIDDLESEX, ss.**

**SUPERIOR COURT DEPT. OF THE TRIAL COURT**

05-0367

**JEANETTE ANDERSON, Representative of the ESTATE OF ESTHER LEE WRIGHT, Plaintiff**

**vs.**

**MERCK & CO., INC., and John and Jane Does, as Sales representatives for MERCK & CO., INC., Defendants.**

**COMPLAINT**

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX
FEB 02 2005
CLERK

Now comes the Plaintiff, by her attorneys, and files the following complaint:

1. Party Plaintiff

The Plaintiff, Jeanette Anderson, is the daughter of Esther Lee Wright and the representative of the Estate of Esther Lee Wright. Ms. Anderson resides at 1219 Pawtucket Boulevard, Lowell, Massachusetts, and at all relevant times herein, was a resident of the Commonwealth of Massachusetts.

2. Party Defendants

2a. The Defendant, Merck & Co., Inc., (hereinafter "MERCK") is a corporation incorporated under the laws of the State of New Jersey, having a principal place of business in the State of New Jersey, and has conducted business in the Commonwealth of Massachusetts. At all relevant times, hereto, MERCK was in the business of promoting, marketing, and distributing the pharmaceutical VIOXX(Rofecoxib).

2b. John and Jane Does are sales representatives for MERCK promoting and distributing VIOXX to physicians within the Commonwealth of Massachusetts. Upon information and belief all or some of the John and Jane Doe Sales Representatives are individuals residing in the Commonwealth of Massachusetts.

As used in this Complaint, the term "Defendant" shall include any party Defendants identified in paragraphs 2a through 2b hereof, and their predecessors, which shall include, but is not limited to, any person, corporation, company or business entity: which formed part of any combination, consolidation, merger or reorganization from which any party Defendant was created or was the surviving corporation; whose assets, stock, property, products or product line was acquired by any party Defendant; whose patent rights, trademark rights, trade secrets of goodwill was acquired by any party Defendant; or which was dominated or controlled by any party Defendant to such an extent that said party Defendant was the "alter ego" of said corporation.

## JURISDICTION

3. The plaintiff's cause of action arises from the Defendants' (1) transacting business in Massachusetts; (2) contracting to supply and/or sell goods in Massachusetts; (3) doing or causing a tortuous act to be done in Massachusetts; and/or (4) causing the consequence of a tortuous act to occur within Massachusetts, and the Defendants do, or solicit business, or engage in a persistent course of conduct or derive substantial revenue from the sale of goods in Massachusetts.

## FACTS

4. At all relevant times herein, the Defendants individually and/or in conjunction with other persons or entities for whose conduct they were legally responsible developed, created, manufactured, designed, tested, labeled, packaged, distributed, supplied, marketed, sold, advertised, and/or otherwise distributed in interstate trade and commerce the drug VIOXX.

5. On information and belief, the drugs were manufactured, distributed, and sold as medication to relieve the signs and symptoms of osteoarthritis and rheumatoid arthritis, for the management of acute pain in adults, and the treatment of primary dysmenorrheal.

6. In May of 1999 VIOXX was approved by the FDA. The Defendants individually began actively and aggressively promoting,

marketing and selling the drug in the United States and eighty other countries. The Defendants fraudulently induced people to use its drug for osteoarthritis and rheumatoid arthritis, for the management of acute pain in adults, and the treatment of primary dysmenorrheal without adequately warning people of the risks associated with the drug that were known or should have been known to the Defendants.

7. The Defendants engaged in a nationwide marketing scheme including but not limited to the Commonwealth of Massachusetts and participated in advertisements and promotional enhancements and literature, directly targeting consumers and various physicians and other health care providers.

8. The Defendants, engaged in the study "VIOXX GATROINTESTINAL OUTCOMES RESEACH" ("VIGOR"). The results of the study were released in March 2000 and the findings demonstrated that VIOXX patients were observed to have a four to five fold increase in myocardial infarctions (MIs) compared to patients on Naprosyn (Naproxen).

9. On information and believe, MERCK mislead patients and health care providers by using press releases, promotional materials and oral representations made by MERCK and through MERCK's sales representatives, to offer an untested hypothetical explanation to assert that VIOXX did not cause an increase in MIs as demonstrated in the VIGOR study.

10. On September 17, 2001 a warning letter was sent by the Department of Health and Human Services, Food and Drug Administration (FDA), requiring MERCK to end all violative promotional materials and send "dear Healthcare provider" letters to communicate the accurate findings and risks of VIOXX demonstrated in the VIGOR study.

11. Seven months later, in April 2002, MERCK sent a "Dear Doctor" letter and made changes and additions to VIOXX label regarding cardiovascular risks under the header "Precautions". Even then, MERCK did not adequately inform physicians or consumers of the full and complete information known to the Defendants, nor did they warn against stroke or any of the other adverse reactions linked to VIOXX that it knew or should have known.

12. The Defendants engaged in and/or actively participated in inducing and/or encouraging use of VIOXX by providing incentives for its use and by encouraging physicians and other health care providers to prescribe it without the benefit of the full and complete information known to the Defendants. The Defendants disseminated false and misleading materials which failed to disclose the risks associated with the use of VIOXX.

13. Upon information and belief, the Defendants also unfairly and deceptively encouraged the use of VIOXX, by falsely misleading potential users including the Plaintiff's decedent, Esther Lee Wright, concerning the risks associated with its use. By affirmative



misrepresentations and omission, the Defendants sought to create the impression that VIOXX was safe for human use and constituted a safe form of a non-steroid anti-inflammatory drug.

14. The Defendants failed to protect users from serious dangers that the Defendants knew or should have known would result from the use of VIOXX.

15. The Defendants failed to adequately disclose, warn, instruct and/or provide guidance to consumers concerning the health hazards and risks associated with the use of VIOXX, which were known or should have been known to the Defendants.

16. The Defendants engaged in the distribution and/or use of VIOXX without providing full and complete instructions and/or warnings.

17. The Defendants failed to adequately and properly test and/or research the health effects of VIOXX.

18. The Defendants engaged in this conduct knowing that VIOXX was being prescribed to people who were not aware of the serious cardiovascular risks of the drug.

19. The promotional campaign initiated, created, monitored, an/or supported by the Defendants was intended to fraudulently induce and misrepresent in an affirmative manner the belief that through the use of VIOXX, arthritis and other pain could be managed with no serious or significant side effects or adverse reactions that would be experienced by the users of the drugs. This information was false, misleading, and

fraudulent. At all times relevant herein, the Defendants intentionally withheld and/or failed to adequately communicate known and/or potential health hazards and risks associated with the use of the drugs. The promotional campaign continued to create the false impression of the successful and safe use of the drug, while at the same time the Defendants were not communicating information regarding risks and complications that were known by or should have been known to the Defendants.

20. The Defendants fraudulently, deceptively, and unfairly misrepresented the facts regarding VIOXX, including but not limited to adequate testing of the drug and the efficiency, severity, frequency, and discomfort of side effects and adverse health effects caused by VIOXX.

21. As a result of the Defendants' deceptive and unfair advertising and marketing practices, VIOXX was distributed throughout the United States and upon information and belief, over 1 million prescriptions for VIOXX were written in the United States, including Massachusetts, prior to the removal of VIOXX from the market.

22. The Plaintiff's decedent began to consume 25mg of VIOXX on May 16, 2000 up to the date of her death on February 8, 2002.

23. The Plaintiff's decedent suffered and died from an acute myocardial infarction, on February 8, 2002, while taking VIOXX. The death certificate lists Acute Myocardial Infarction as the immediate cause of death.

24. On September 30, 2004, the Defendant MERCK announced a voluntary worldwide withdrawal of VIOXX from the market after the Adenomatous Polyp Prevention trial(APPROVe) confirmed the cardiovascular risks previously found in the VIGOR study.

**COUNT I**

**NEGLIGENCE**

25. The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

26. It was the duty of the Defendants to use and exercise reasonable and due care in the manufacture, development, design, formulation, testing, inspection, production, advertisement, promotion, marketing, sale and distribution of VIOXX.

27. It was also the duty of the Defendant to provide detailed and adequate instructions relative to the proper and safe use of VIOXX and to provide detailed and adequate warnings concerning any and all dangers, characteristics, and potentialities of VIOXX, including known or suspected risks from the use of VIOXX, and to prevent a product which they knew or with reasonable care should have known was unreasonably dangerous and defective from entering the channels of trade.

28. It was the continuing duty of the Defendants to advise and warn purchasers, consumer, users, medical providers and other health care

 

providers of all dangers, characteristics, potentialities and defects discovered subsequent to their initial marketing or sale of VIOXX.

29. Yet, nevertheless, wholly disregarding the aforesaid duties, the Defendants breached their duties by:

a. unreasonable, careless and negligent conduct in the design, development, formulation, manufacture, advertisement, promotion, marketing, sale, and distribution of VIOXX;

b. failing to adequately test VIOXX;

c. failing to warn or instruct, or adequately warn or adequately instruct, physicians and medical providers concerning the risk or likelihood of, <u>inter alia</u>, cardiovascular events in individuals who have consumed VIOXX and other medical complications associated with the use of VIOXX which Defendants had or should have had knowledge of;

d. failing to warn or instruct, or adequately warn or adequately instruct the Plaintiff's decedent and consumers of VIOXX concerning the risk or likelihood of, <u>inter alia</u>, suffering cardiovascular events and other medical complications associated with the use of VIOXX which Defendants had or should have had knowledge of;

e. by placing in the channels of trade a drug which Defendants knew or with reasonable care should have known was unreasonably dangerous and unsafe and by placing VIOXX in the channel of trade in a manner which the Defendants foresaw, or in the exercise of reasonable care ought to have foreseen, would carry VIOXX into contact with persons such as the Plaintiff's decedent, and by failing to use reasonable care to prevent injury to such persons, including the Plaintiff's decedent.

f. marketing an inherently unsafe and/or dangerous drug;

g. misrepresenting that VIOXX was safe when the Defendants knew, or in the exercise of reasonable care should have known, that VIOXX was dangerous and unsafe.

h. failing to provide adequate field and clinical testing both before and after marketing VIOXX;

i. failing to disclose known risks and instead minimizing the risks associated with the use of VIOXX in promotional campaigns and materials and oral representations.

j. failing to adequately warn of reactions, side effect, and complications associated with the use of VIOXX.

30. As a direct and proximate result of the unreasonable, careless, and negligent conduct of the Defendants, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death. Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff, demands compensatory damages, plus interests and costs.

**COUNT II**

**BREACH OF EXPRESSED AND IMPLIED WARRANTIES**

31. The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

32. The Plaintiff's decedent, Esther Lee Wright was a person whom the Defendants could reasonably have expected to use, consume, or be affected by the Defendants' products within the meaning of Massachusetts General Laws c. 106, §2-318, as the Defendants knew or had reason to know that their products could cause serious cardiovascular injuries.

 

33. The Defendants expressly and impliedly warranted that VIOXX was safe, merchantable, fit for consumption, and for the use for which it was intended and fit for its particular purpose to relieve the signs and symptoms of osteoarthritis and rheumatoid arthritis, the management of acute pain in adults, and the treatment of primary dysmenorrheal.

34. The Defendants knew or had reason to know of the particular purposes for which VIOXX would be used.

35. The Plaintiff's decedent relied upon the Defendants' skill or judgment to furnish or select a suitable product.

36. The Defendants breached said warranties to the Plaintiff's decedent because VIOXX was unsafe and not of merchantable quality.

WHEREFORE Plaintiff demands compensatory damages, plus interests and costs.

**COUNT III**
**DEFECTIVE DESIGN/STRICT LIABILITY**

37. Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

38. At all times material hereto, Defendants engaged in the business of researching, formulating, testing, developing, designing, licensing, assembling, compounding, marketing, promoting, distributing, detailing, and/or selling VIOXX that were defective and unreasonably dangerous to consumers, including Plaintiff's decedent.

39. At all times material hereto, VIOXX which was researched, formulated, tested, developed, designed, licensed, assembled,

 

compounded, marketed, promoted, distributed, detailed, and/or sold by

Defendants was expected to reach, and did reach, prescribing physicians

and consumers including Plaintiff's decedent, without substantial change

in the condition in which they was sold.

     40.     At all times material hereto, VIOXX was in a defective and

unreasonably dangerous condition at the time it was placed in the stream

of commerce in ways which include, but are not limited to, one or more of

the following particulars:

    A.    When placed in the stream of commerce, VIOXX
           contained unreasonably dangerous design defects and was
           not reasonably safe as intended to be used, subjecting
           Plaintiff's decedent to risks which exceeded the benefits of
           VIOXX;
    B.    When placed in the stream of commerce, VIOXX was
           defective in design and formulation, making use of VIOXX
           more dangerous than an ordinary consumer would expect;
    C.    VIOXX was insufficiently tested;
    D.    The intended use of VIOXX caused harmful side effects
           which outweighed any potential utility; and
    E.    VIOXX was not safe for its intended use for arthritis and
           acute pain.

     41.     But for the aforementioned defective and unreasonably

dangerous conditions, VIOXX would not have been prescribed to

Plaintiff's decedent, she would not have ingested VIOXX, and she would

not have sustained the injuries alleged herein.

     42.     As a direct and proximate result of the unreasonable,

careless, and negligent conduct of the Defendants, the Plaintiff's decedent,

Esther Lee Wright, was caused to sustain severe and permanent injuries

including an Acute Myocardial Infarction, resulting in death.  Prior to her

death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff demands judgment against Defendants for compensatory damages plus interest and costs.

**COUNT IV**
**FAILURE TO WARN/STRICT LIABILITY**

43. Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

44. VIOXX was defective and unreasonably dangerous when it left the possession of Defendants in that VIOXX contained warnings which were misleading regarding the purported benefits associated with VIOXX and were inadequate and insufficient to alert physicians and consumers, such as Plaintiff's decedent, to the dangerous risks and reactions associated with VIOXX, including, but not limited to, cardiovascular risks, including myocardial infarction and other serious and life threatening side affects.

45. The physicians prescribed VIOXX to Plaintiff's decedent for the intended purpose.

46. Neither the prescribing physicians nor Plaintiff's decedent could have discovered any defect in VIOXX through the exercise of reasonable care.

47. Defendants are held to the level of knowledge of an expert in the field.

48. The prescribing physicians did not have substantially the same knowledge as an adequate warning from the manufacturer, distributor or sales representative should have communicated to the prescribing physician.

49. The warnings that were given by Defendants to the prescribing physicians were not adequate, accurate, or clear, and were ambiguous and intentionally misleading.

50. Defendants had a continuing duty to warn the prescribing physicians and Plaintiff's decedent of the dangers associated with VIOXX.

51. As a direct and legal result of Defendants' failure to warn, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death. Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff demands judgment against Defendants for compensation and damages, plus interest and costs.

**COUNT V**
**FRAUDULENT/NEGLIGENT MISREPRESENTATION**

52. Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

53. Defendants, having undertaken the manufacturing, marketing, prescription dispensing, distributing and promotion of VIOXX owed a duty to provide complete and accurate information regarding VIOXX to Plaintiff's decedent, her physicians, and anyone else



Defendants knew or should have known would ingest or prescribe VIOXX.

54. Defendants misrepresented material facts regarding the safety and efficacy of VIOXX, and failed to inform Plaintiff's decedent, the public and Plaintiff's decedent prescribing physician of these material facts.

55. Defendants fraudulently and/or negligently misrepresented to Plaintiff's decedent physicians, the FDA, and the general public that VIOXX was safe and effective, that the benefits of taking VIOXX outweighed any risks, and/or fraudulently and/or negligently misrepresented and concealed safety and effectiveness information regarding the product, including but not limited to VIOXX's propensity to cause serious physical harm. The continuous and ongoing course of action constituting fraudulent and/or negligent misrepresentation on Plaintiff's decedent started at least as early as 2000, if not earlier, and continued through repeated acts and non-disclosure every year since then throughout the United States and elsewhere.

56. VIOXX was in fact unsafe and the use of VIOXX posed a risk of injury and death which outweighed the purported benefits of its use, such that injury was in fact caused to Plaintiff's decedent and others.

57. Defendants made fraudulent and/or negligent misrepresentations regarding adverse information at a time when it knew, or should have known, that VIOXX had defects, dangers, and

characteristics that were other than what Defendants had represented to the prescribing doctors or other dispensing entities, the FDA, and the consuming public, including Plaintiff's decedent. Specifically, Defendants misrepresented the following:

a. It was dangerous to prescribe VIOXX;
b. VIOXX carried risks of serious, life threatening adverse effects;

58. The misrepresentations alleged above were perpetuated directly and indirectly by the Defendants.

59. The fraudulent and/or negligent misrepresentations of Defendants took the form of, among other things, express and implied statements, publicly disseminated misinformation, misinformation provided to regulatory agencies, inadequate, incomplete and misleading warnings about the subject products, failure to disclose important safety and injury information regarding the products while having a duty to disclose to Plaintiff's decedent and others such information.

60. Defendants knew or should have known that these representations were misleading at the time they were made or omitted, and made the representations with the intent or purpose that Plaintiff's decedent and her physicians would rely on them, leading to the use of VIOXX by Plaintiff's decedent.

61. At the time of Defendants' fraudulent and/or negligent misrepresentations, Plaintiff's decedent and her physicians were unaware



of the inaccuracy of the statements being made and believed them to be true.

62. Both Plaintiff's decedent and her physician justifiably relied on and were induced by the misrepresentations and relied on the absence of adverse safety information in the prescription and ingestion of VIOXX.

63. Defendants had a post-sale duty to warn Plaintiff's decedent and/or her physicians about the potential risks and complications associated with VIOXX in a timely manner.

64. The misrepresentations by Defendants constitute a continuing tort.

65. Defendants made the statements and/or omissions with the intention that Plaintiff's decedent and her prescribing physicians or other dispensing entities and the consuming public would rely on such or the absence of such information in selecting VIOXX as a treatment for arthritis and pain management.

66. As a direct and legal result of the fraudulent and/or negligent misrepresentations of Defendants, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death. Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

 

WHEREFORE, the Plaintiff demands judgment against Defendants for compensatory damages, plus interest and costs.

## COUNT VI
## WRONGFUL DEATH

67. The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

68. As a result of consuming VIOXX, Plaintiff's decedent suffered from an acute myocardial infarction, which substantially contributed to her death on February 8, 2002.

69. Plaintiff's decedent is survived by her family, who by reason of said death have been deprived of society, companionship, comfort, guidance, counsel, and advice of the said Plaintiff's decedent. In addition, the estate of Plaintiff's decedent has incurred reasonable funeral and burial expenses as a result of the death of Plaintiff's decedent.

WHEREFORE, the Plaintiff Jeanette Anderson, as the Representative of the Estate of Esther Lee Wright, demands compensatory and punitive damages, plus interests and costs.

## COUNT VII
## MALICIOUS, WILLFUL, WANTON, AND RECKLESS CONDUCT OR GROSS NEGLIGENCE

70. The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.



71. At least by 2000, the Defendants, or some of them, possessed medical and scientific data indicating that VIOXX posed potentially serious cardiovascular risks and as early as this date the Defendants, or some of them, possessed medical and scientific data indicating that the use of VIOXX was potentially hazardous to the health and safety of Esther Lee Wright and others in her position.

72. Prompted by pecuniary motives, the Defendants ignored and failed to act upon such medical and scientific data and deprived the public, and particularly the users, from access to said medical and scientific data, thereby depriving them of informed and free choice as to whether or not to consume VIOXX.

73. The Defendants acted maliciously, willfully, wantonly, recklessly, or with gross negligence, by continuing to market VIOXX with reckless disregard for the health and safety of the Plaintiff's decedent an others users and consumers, knowing the dangerous characteristics and propensities of VIOXX, but still depriving those affected by the dangers from information about those dangers.

74. Because the Defendants acted maliciously, willfully, wantonly, recklessly, or with gross negligence, in marketing their hazardous product, in ignoring the medical and scientific data which was available to them, and depriving consumers, users, and the general public from that medical and scientific data, the Plaintiff is entitled to punitivie damages.



WHEREFORE, the Plaintiff demands punitive damages in addition to the damages demanded in Counts I-V.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues.

WHEREFORE, the Plaintiff prays:

1. The judgment enter against the Defendants on all Counts of this Complaint;
2. That Plaintiff be awarded full, fair and complete compensation, for which she is legally entitled;
3. that Plaintiff be awarded all appropriate costs, attorney's fees and interest authorized by law;
4. That the court enter such other relief as is determined just and appropriate.

Respectfully Submitted,

David C. Strouss (BBO#546253)
Marilyn T. McGoldrick,(BBO#561766)
Allyson S. Hauck (BBO#659547)
THORNTON & NAUMES, LLP
100 Summer Street, 30th Floor
Boston, MA 02110
(617)720-1333

Dated: February 2 2005


**COMMONWEALTH OF MASSACHUSETTS**

**MIDDLESEX, ss.**

**SUPERIOR COURT**
**DEPT. OF THE TRIAL COURT**

**JEANETTE ANDERSON,**
**Representative of the**
**ESTATE OF ESTHER LEE WRIGHT,**
**Plaintiff**

**vs.**

**MERCK & CO., INC.,**
**and John and Jane Does, as**
**Sales representatives for**
**MERCK & CO., INC.,**
**Defendants.**

**FIRST AMENDED COMPLAINT**

Now comes the Plaintiff, by her attorneys, and files the following complaint:

1. Party Plaintiff

The Plaintiff, Jeanette Anderson, is the daughter of Esther Lee Wright and the representative of the Estate of Esther Lee Wright. Ms. Anderson resides at 1219 Pawtucket Boulevard, Lowell, Massachusetts, and at all relevant times herein, was a resident of the Commonwealth of Massachusetts.

2. Party Defendants

2a. The Defendant, Merck & Co., Inc., (hereinafter "MERCK") is a corporation incorporated under the laws of the State of New Jersey, having a principal place of business in the State of New Jersey, and has conducted business in the Commonwealth of Massachusetts. At all relevant times, hereto, MERCK was in the business of promoting, marketing, and distributing the pharmaceutical VIOXX(Rofecoxib).

2b. John and Jane Does are sales representatives for MERCK promoting and distributing VIOXX to physicians within the Commonwealth of Massachusetts. Upon information and belief all or some of the John and Jane Doe Sales Representatives are individuals residing in the Commonwealth of Massachusetts.

As used in this Complaint, the term "Defendant" shall include any party Defendants identified in paragraphs 2a through 2b hereof, and their predecessors, which shall include, but is not limited to, any person, corporation, company or business entity: which formed part of any combination, consolidation, merger or reorganization from which any party Defendant was created or was the surviving corporation; whose assets, stock, property, products or product line was acquired by any party Defendant; whose patent rights, trademark rights, trade secrets of goodwill was acquired by any party Defendant; or which was dominated or controlled by any party Defendant to such an extent that said party Defendant was the "alter ego" of said corporation.

## JURISDICTION

3. The plaintiff's cause of action arises from the Defendants' (1) transacting business in Massachusetts; (2) contracting to supply and/or sell goods in Massachusetts; (3) doing or causing a tortuous act to be done in Massachusetts; and/or (4) causing the consequence of a tortuous act to occur within Massachusetts, and the Defendants do, or solicit business, or engage in a persistent course of conduct or derive substantial revenue from the sale of goods in Massachusetts.

## FACTS

4. At all relevant times herein, the Defendants individually and/or in conjunction with other persons or entities for whose conduct they were legally responsible developed, created, manufactured, designed, tested, labeled, packaged, distributed, supplied, marketed, sold, advertised, and/or otherwise distributed in interstate trade and commerce the drug VIOXX.

5. On information and belief, the drugs were manufactured, distributed, and sold as medication to relieve the signs and symptoms of osteoarthritis and rheumatoid arthritis, for the management of acute pain in adults, and the treatment of primary dysmenorrheal.

6. In May of 1999 VIOXX was approved by the FDA. The Defendants individually began actively and aggressively promoting,

marketing and selling the drug in the United States and eighty other countries. The Defendants fraudulently induced people to use its drug for osteoarthritis and rheumatoid arthritis, for the management of acute pain in adults, and the treatment of primary dysmenorrheal without adequately warning people of the risks associated with the drug that were known or should have been known to the Defendants.

7. The Defendants engaged in a nationwide marketing scheme including but not limited to the Commonwealth of Massachusetts and participated in advertisements and promotional enhancements and literature, directly targeting consumers and various physicians and other health care providers.

8. The Defendants, engaged in the study "VIOXX GATROINTESTINAL OUTCOMES RESEACH" ("VIGOR"). The results of the study were released in March 2000 and the findings demonstrated that VIOXX patients were observed to have a four to five fold increase in myocardial infarctions (MIs) compared to patients on Naprosyn (Naproxen).

9. On information and believe, MERCK mislead patients and health care providers by using press releases, promotional materials and oral representations made by MERCK and through MERCK's sales representatives, to offer an untested hypothetical explanation to assert that VIOXX did not cause an increase in MIs as demonstrated in the VIGOR study.



10. On September 17, 2001 a warning letter was sent by the Department of Health and Human Services, Food and Drug Administration (FDA), requiring MERCK to end all violative promotional materials and send "dear Healthcare provider" letters to communicate the accurate findings and risks of VIOXX demonstrated in the VIGOR study.

11. Seven months later, in April 2002, MERCK sent a "Dear Doctor" letter and made changes and additions to VIOXX label regarding cardiovascular risks under the header "Precautions". Even then, MERCK did not adequately inform physicians or consumers of the full and complete information known to the Defendants, nor did they warn against stroke or any of the other adverse reactions linked to VIOXX that it knew or should have known.

12. The Defendants engaged in and/or actively participated in inducing and/or encouraging use of VIOXX by providing incentives for its use and by encouraging physicians and other health care providers to prescribe it without the benefit of the full and complete information known to the Defendants. The Defendants disseminated false and misleading materials which failed to disclose the risks associated with the use of VIOXX.

13. Upon information and belief, the Defendants also unfairly and deceptively encouraged the use of VIOXX, by falsely misleading potential users including the Plaintiff's decedent, Esther Lee Wright, concerning the risks associated with its use. By affirmative

misrepresentations and omission, the Defendants sought to create the impression that VIOXX was safe for human use and constituted a safe form of a non-steroid anti-inflammatory drug.

14. The Defendants failed to protect users from serious dangers that the Defendants knew or should have known would result from the use of VIOXX.

15. The Defendants failed to adequately disclose, warn, instruct and/or provide guidance to consumers concerning the health hazards and risks associated with the use of VIOXX, which were known or should have been known to the Defendants.

16. The Defendants engaged in the distribution and/or use of VIOXX without providing full and complete instructions and/or warnings.

17. The Defendants failed to adequately and properly test and/or research the health effects of VIOXX.

18. The Defendants engaged in this conduct knowing that VIOXX was being prescribed to people who were not aware of the serious cardiovascular risks of the drug.

19. The promotional campaign initiated, created, monitored, an/or supported by the Defendants was intended to fraudulently induce and misrepresent in an affirmative manner the belief that through the use of VIOXX, arthritis and other pain could be managed with no serious or significant side effects or adverse reactions that would be experienced by the users of the drugs. This information was false, misleading, and

fraudulent. At all times relevant herein, the Defendants intentionally withheld and/or failed to adequately communicate known and/or potential health hazards and risks associated with the use of the drugs. The promotional campaign continued to create the false impression of the successful and safe use of the drug, while at the same time the Defendants were not communicating information regarding risks and complications that were known by or should have been known to the Defendants.

20. The Defendants fraudulently, deceptively, and unfairly misrepresented the facts regarding VIOXX, including but not limited to adequate testing of the drug and the efficiency, severity, frequency, and discomfort of side effects and adverse health effects caused by VIOXX.

21. As a result of the Defendants' deceptive and unfair advertising and marketing practices, VIOXX was distributed throughout the United States and upon information and belief, over 1 million prescriptions for VIOXX were written in the United States, including Massachusetts, prior to the removal of VIOXX from the market.

22. The Plaintiff's decedent began to consume 25mg of VIOXX on May 16, 2000 up to the date of her death on February 8, 2002.

23. The Plaintiff's decedent suffered and died from an acute myocardial infarction, on February 8, 2002, while taking VIOXX. The death certificate lists Acute Myocardial Infarction as the immediate cause of death.

24. On September 30, 2004, the Defendant MERCK announced a voluntary worldwide withdrawal of VIOXX from the market after the Adenomatous Polyp Prevention trial(APPROVe) confirmed the cardiovascular risks previously found in the VIGOR study.

**COUNT I**

**NEGLIGENCE**

25. The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

26. It was the duty of the Defendants to use and exercise reasonable and due care in the manufacture, development, design, formulation, testing, inspection, production, advertisement, promotion, marketing, sale and distribution of VIOXX.

27. It was also the duty of the Defendant to provide detailed and adequate instructions relative to the proper and safe use of VIOXX and to provide detailed and adequate warnings concerning any and all dangers, characteristics, and potentialities of VIOXX, including known or suspected risks from the use of VIOXX, and to prevent a product which they knew or with reasonable care should have known was unreasonably dangerous and defective from entering the channels of trade.

28. It was the continuing duty of the Defendants to advise and warn purchasers, consumer, users, medical providers and other health care

providers of all dangers, characteristics, potentialities and defects discovered subsequent to their initial marketing or sale of VIOXX.

29. Yet, nevertheless, wholly disregarding the aforesaid duties, the Defendants breached their duties by:

a. unreasonable, careless and negligent conduct in the design, development, formulation, manufacture, advertisement, promotion, marketing, sale, and distribution of VIOXX;

b. failing to adequately test VIOXX;

c. failing to warn or instruct, or adequately warn or adequately instruct, physicians and medical providers concerning the risk or likelihood of, inter alia, cardiovascular events in individuals who have consumed VIOXX and other medical complications associated with the use of VIOXX which Defendants had or should have had knowledge of;

d. failing to warn or instruct, or adequately warn or adequately instruct the Plaintiff's decedent and consumers of VIOXX concerning the risk or likelihood of, inter alia, suffering cardiovascular events and other medical complications associated with the use of VIOXX which Defendants had or should have had knowledge of;

e. by placing in the channels of trade a drug which Defendants knew or with reasonable care should have known was unreasonably dangerous and unsafe and by placing VIOXX in the channel of trade in a manner which the Defendants foresaw, or in the exercise of reasonable care ought to have foreseen, would carry VIOXX into contact with persons such as the Plaintiff's decedent, and by failing to use reasonable care to prevent injury to such persons, including the Plaintiff's decedent.

f. marketing an inherently unsafe and/or dangerous drug;

g. misrepresenting that VIOXX was safe when the Defendants knew, or in the exercise of reasonable care should have known, that VIOXX was dangerous and unsafe.

h. failing to provide adequate field and clinical testing both before and after marketing VIOXX;

i. failing to disclose known risks and instead minimizing the risks associated with the use of VIOXX in promotional campaigns and materials and oral representations.

j. failing to adequately warn of reactions, side effect, and complications associated with the use of VIOXX.

30. As a direct and proximate result of the unreasonable, careless, and negligent conduct of the Defendants, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death. Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff, demands compensatory damages, plus interests and costs.

## COUNT II

## BREACH OF EXPRESSED AND IMPLIED WARRANTIES

31. The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

32. The Plaintiff's decedent, Esther Lee Wright was a person whom the Defendants could reasonably have expected to use, consume, or be affected by the Defendants' products within the meaning of Massachusetts General Laws c. 106, §2-318, as the Defendants knew or had reason to know that their products could cause serious cardiovascular injuries.

33. The Defendants expressly and impliedly warranted that VIOXX was safe, merchantable, fit for consumption, and for the use for which it was intended and fit for its particular purpose to relieve the signs and symptoms of osteoarthritis and rheumatoid arthritis, the management of acute pain in adults, and the treatment of primary dysmenorrheal.

34. The Defendants knew or had reason to know of the particular purposes for which VIOXX would be used.

35. The Plaintiff's decedent relied upon the Defendants' skill or judgment to furnish or select a suitable product.

36. The Defendants breached said warranties to the Plaintiff's decedent because VIOXX was unsafe and not of merchantable quality.

WHEREFORE Plaintiff demands compensatory damages, plus interests and costs.

**COUNT III**

**DEFECTIVE DESIGN/STRICT LIABILITY**

37. Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

38. At all times material hereto, Defendants engaged in the business of researching, formulating, testing, developing, designing, licensing, assembling, compounding, marketing, promoting, distributing, detailing, and/or selling VIOXX that were defective and unreasonably dangerous to consumers, including Plaintiff's decedent.

39. At all times material hereto, VIOXX which was researched, formulated, tested, developed, designed, licensed, assembled,

compounded, marketed, promoted, distributed, detailed, and/or sold by

Defendants was expected to reach, and did reach, prescribing physicians

and consumers including Plaintiff's decedent, without substantial change

in the condition in which they was sold.

    40.    At all times material hereto, VIOXX was in a defective and

unreasonably dangerous condition at the time it was placed in the stream

of commerce in ways which include, but are not limited to, one or more of

the following particulars:

    A.    When placed in the stream of commerce, VIOXX
contained unreasonably dangerous design defects and was
not reasonably safe as intended to be used, subjecting
Plaintiff's decedent to risks which exceeded the benefits of
VIOXX;

    B.    When placed in the stream of commerce, VIOXX was
defective in design and formulation, making use of VIOXX
more dangerous than an ordinary consumer would expect;

    C.    VIOXX was insufficiently tested;

    D.    The intended use of VIOXX caused harmful side effects
which outweighed any potential utility; and

    E.    VIOXX was not safe for its intended use for arthritis and
acute pain.

    41.    But for the aforementioned defective and unreasonably

dangerous conditions, VIOXX would not have been prescribed to

Plaintiff's decedent, she would not have ingested VIOXX, and she would

not have sustained the injuries alleged herein.

    42.    As a direct and proximate result of the unreasonable,

careless, and negligent conduct of the Defendants, the Plaintiff's decedent,

Esther Lee Wright, was caused to sustain severe and permanent injuries

including an Acute Myocardial Infarction, resulting in death. Prior to her

death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff demands judgment against Defendants for compensatory damages plus interest and costs.

**COUNT IV**
**FAILURE TO WARN/STRICT LIABILITY**

43. Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

44. VIOXX was defective and unreasonably dangerous when it left the possession of Defendants in that VIOXX contained warnings which were misleading regarding the purported benefits associated with VIOXX and were inadequate and insufficient to alert physicians and consumers, such as Plaintiff's decedent, to the dangerous risks and reactions associated with VIOXX, including, but not limited to, cardiovascular risks, including myocardial infarction and other serious and life threatening side affects.

45. The physicians prescribed VIOXX to Plaintiff's decedent for the intended purpose.

46. Neither the prescribing physicians nor Plaintiff's decedent could have discovered any defect in VIOXX through the exercise of reasonable care.

47. Defendants are held to the level of knowledge of an expert in the field.

48. The prescribing physicians did not have substantially the same knowledge as an adequate warning from the manufacturer, distributor or sales representative should have communicated to the prescribing physician.

49. The warnings that were given by Defendants to the prescribing physicians were not adequate, accurate, or clear, and were ambiguous and intentionally misleading.

50. Defendants had a continuing duty to warn the prescribing physicians and Plaintiff's decedent of the dangers associated with VIOXX.

51. As a direct and legal result of Defendants' failure to warn, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death. Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff demands judgment against Defendants for compensation and damages, plus interest and costs.

**COUNT V**
**FRAUDULENT/NEGLIGENT MISREPRESENTATION**

52. Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

53. Defendants, having undertaken the manufacturing, marketing, prescription dispensing, distributing and promotion of VIOXX owed a duty to provide complete and accurate information regarding VIOXX to Plaintiff's decedent, her physicians, and anyone else



Defendants knew or should have known would ingest or prescribe VIOXX.

54. Defendants misrepresented material facts regarding the safety and efficacy of VIOXX, and failed to inform Plaintiff's decedent, the public and Plaintiff's decedent prescribing physician of these material facts.

55. Defendants fraudulently and/or negligently misrepresented to Plaintiff's decedent physicians, the FDA, and the general public that VIOXX was safe and effective, that the benefits of taking VIOXX outweighed any risks, and/or fraudulently and/or negligently misrepresented and concealed safety and effectiveness information regarding the product, including but not limited to VIOXX's propensity to cause serious physical harm. The continuous and ongoing course of action constituting fraudulent and/or negligent misrepresentation on Plaintiff's decedent started at least as early as 2000, if not earlier, and continued through repeated acts and non-disclosure every year since then throughout the United States and elsewhere.

56. VIOXX was in fact unsafe and the use of VIOXX posed a risk of injury and death which outweighed the purported benefits of its use, such that injury was in fact caused to Plaintiff's decedent and others.

57. Defendants made fraudulent and/or negligent misrepresentations regarding adverse information at a time when it knew, or should have known, that VIOXX had defects, dangers, and

characteristics that were other than what Defendants had represented to the prescribing doctors or other dispensing entities, the FDA, and the consuming public, including Plaintiff's decedent. Specifically, Defendants misrepresented the following:

a. It was dangerous to prescribe VIOXX;
b. VIOXX carried risks of serious, life threatening adverse effects;

58. The misrepresentations alleged above were perpetuated directly and indirectly by the Defendants.

59. The fraudulent and/or negligent misrepresentations of Defendants took the form of, among other things, express and implied statements, publicly disseminated misinformation, misinformation provided to regulatory agencies, inadequate, incomplete and misleading warnings about the subject products, failure to disclose important safety and injury information regarding the products while having a duty to disclose to Plaintiff's decedent and others such information.

60. Defendants knew or should have known that these representations were misleading at the time they were made or omitted, and made the representations with the intent or purpose that Plaintiff's decedent and her physicians would rely on them, leading to the use of VIOXX by Plaintiff's decedent.

61. At the time of Defendants' fraudulent and/or negligent misrepresentations, Plaintiff's decedent and her physicians were unaware

of the inaccuracy of the statements being made and believed them to be true.

62. Both Plaintiff's decedent and her physician justifiably relied on and were induced by the misrepresentations and relied on the absence of adverse safety information in the prescription and ingestion of VIOXX.

63. Defendants had a post-sale duty to warn Plaintiff's decedent and/or her physicians about the potential risks and complications associated with VIOXX in a timely manner.

64. The misrepresentations by Defendants constitute a continuing tort.

65. Defendants made the statements and/or omissions with the intention that Plaintiff's decedent and her prescribing physicians or other dispensing entities and the consuming public would rely on such or the absence of such information in selecting VIOXX as a treatment for arthritis and pain management.

66. As a direct and legal result of the fraudulent and/or negligent misrepresentations of Defendants, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death. Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.



WHEREFORE, the Plaintiff demands judgment against Defendants for compensatory damages, plus interest and costs.

**COUNT VI**

**WRONGFUL DEATH**

67. The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

68. As a result of consuming VIOXX, Plaintiff's decedent suffered from an acute myocardial infarction, which substantially contributed to her death on February 8, 2002.

69. Plaintiff's decedent is survived by her family, who by reason of said death have been deprived of society, companionship, comfort, guidance, counsel, and advice of the said Plaintiff's decedent. In addition, the estate of Plaintiff's decedent has incurred reasonable funeral and burial expenses as a result of the death of Plaintiff's decedent.

WHEREFORE, the Plaintiff Jeanette Anderson, as the Representative of the Estate of Esther Lee Wright, demands compensatory and punitive damages, plus interests and costs.

**COUNT VII**

**MALICIOUS, WILLFUL, WANTON, AND RECKLESS CONDUCT OR GROSS NEGLIGENCE**

70. The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

71. At least by 2000, the Defendants, or some of them, possessed medical and scientific data indicating that VIOXX posed potentially serious cardiovascular risks and as early as this date the Defendants, or some of them, possessed medical and scientific data indicating that the use of VIOXX was potentially hazardous to the health and safety of Esther Lee Wright and others in her position.

72. Prompted by pecuniary motives, the Defendants ignored and failed to act upon such medical and scientific data and deprived the public, and particularly the users, from access to said medical and scientific data, thereby depriving them of informed and free choice as to whether or not to consume VIOXX.

73. The Defendants acted maliciously, willfully, wantonly, recklessly, or with gross negligence, by continuing to market VIOXX with reckless disregard for the health and safety of the Plaintiff's decedent an others users and consumers, knowing the dangerous characteristics and propensities of VIOXX, but still depriving those affected by the dangers from information about those dangers.

74. Because the Defendants acted maliciously, willfully, wantonly, recklessly, or with gross negligence, in marketing their hazardous product, in ignoring the medical and scientific data which was available to them, and depriving consumers, users, and the general public from that medical and scientific data, the Plaintiff is entitled to punitive damages.

 

**COUNT VIII**

**Violation of M.G.L. c.93A**

75. The plaintiff repeats, realleges, and reavers paragraphs one through seventy-four above as if expressly set forth fully hereinafter.

76. At all relevant times hereto the defendants were engaged in trade or commerce.

77. The acts of the defendants alleged in Counts I through VII, and as outlined in the Facts, constitute unfair or deceptive acts or practices within the meaning of G.L. c. 93A, §§ 2 and 3, 940 C.M.R. 3.05(1), and 940 C.M.R. 3.16(1) and (2).

78. The actions of the defendants described herein were performed willfully and knowingly.

79. As a result of the unfair or deceptive acts or practices described in the Facts, the plaintiff sustained injury including but not limited to the injuries stated in Paragraph 23 above, incorporated herein.

WHEREFORE, the plaintiff, Esther Lee Wright, demands judgment against the defendants in an amount that is fair and reasonable; plus treble such amount as provided by M.G.L. c. 93A, sec. 9(3); plus interest, costs and attorneys' fees to the plaintiff; and award such other relief as this Court deems just and proper.

WHEREFORE, the Plaintiff demands punitive damages in addition to the damages demanded in Counts I-VII.



**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues.

WHEREFORE, the Plaintiff prays:

1. The judgment enter against the Defendants on all Counts of this Complaint;
2. That Plaintiff be awarded full, fair and complete compensation, for which she is legally entitled;
3. that Plaintiff be awarded all appropriate costs, attorney's fees and interest authorized by law;
4. That the court enter such other relief as is determined just and appropriate.

Respectfully Submitted,

David C. Strouss (BBO#546253)
Marilyn T. McGoldrick,(BBO#561766)
Allyson S. Hauck (BBO#659547)
THORNTON & NAUMES, LLP
100 Summer Street, 30th Floor
Boston, MA 02110
(617)720-1333

Dated: February 23 2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

05 10947 JLT

1. Title of case (name of first party on each side only) Jeanette Anderson, Representative of the Estate of Esther Lee Wright v. Merck & Co., Inc.

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

- [ ] I. 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.
- [ ] II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. *Also complete AO 120 or AO 121 for patent, trademark or copyright cases
- [x] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.
- [ ] IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.
- [ ] V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES [ ] NO [x]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

YES [ ] NO [x]

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES [ ] NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES [ ] NO [x]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES [x] NO [ ]

A. If yes, in which division do all of the non-governmental parties reside?

Eastern Division [x] Central Division [ ] Western Division [ ]

B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division [ ] Central Division [ ] Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

YES [ ] NO [x]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME James J. Dillon, Esq., FOLEY HOAG LLP

ADDRESS 155 Seaport Boulevard, Boston, Massachusetts 02210

TELEPHONE NO. (617)832-1000

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

JEANETTE ANDERSON, Representative of the ESTATE OF ESTHER LEE WRIGHT

**(b)** County of Residence of First Listed Plaintiff Middlesex, MA
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

David C. Strouss, Esq., THORNTON & NAUMES, LLP, 100 Summer Street, 30th Floor, Boston, Massachusetts 02110. (617)720-1333

**DEFENDANTS**

MERCK & CO., INC., and John and Jane Does, as Sales Representatives for MERCK & CO., INC.

County of Residence of First Listed Defendant Hunterdon, NJ
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

James J. Dillon, Esq., FOLEY HOAG LLP, 155 Seaport Boulevard, Boston, Massachusetts 02210. (617)832-1000

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☒ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

☐ 1 Original Proceeding ☒ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):
28 U.S.C. 1332

Brief description of cause:
Action for compensatory damages for ingestion of VIOXX

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $** in excess of $75,000

CHECK YES only if demanded in complaint: **JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ______ DOCKET NUMBER ______

DATE May 9, 2005

SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______