IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEANETTE ANDERSON, Representative of the ESTATE OF ESTHER LEE WRIGHT, <br><br> Plaintiff, <br><br> v. <br><br> MERCK & CO., INC., and John and Jane Does, as Sales Representatives for MERCK & CO, INC., <br><br> Defendants. | CIVIL ACTION No. 05-CV-10947-JLT |

## NOTICE OF FILING CERTIFIED COPIES OF STATE COURT PAPERS

Pursuant to 28 U.S.C. § 1446, defendant hereby files certified copies of all records and

proceedings in the superior court action (Middlesex County Superior Court Civil Action No. 05-

0367).

MERCK & CO., INC.
By its attorneys:

James J. Dillon (BBO# 124660)
Bradley E. Abruzzi (BBO# 651516)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02110-2600
(617) 832-1000

Dated: May 20, 2005

B3026436.1

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing NOTICE OF FILING CERTIFIED COPIES OF STATE COURT PAPERS was served on May 20, 2005 by regular U.S. mail, upon:

David C. Strouss
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA 02110
**Counsel for Plaintiff Jeanette Anderson, Representative of the Estate of Esther Lee Wright**

**TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —**
**TORT — MOTOR VEHICLE TORT — CONTRACT —**
**EQUITABLE RELIEF — OTHER**

## COMMONWEALTH OF MASSACHUSETTS

| | | SUPERIOR COURT |
| --- | --- | --- |
| MIDDLESEX | ss | DEPARTMENT |
| [seal] | | OF THE |
| | | TRIAL COURT. |
| | | CIVIL ACTION |
| | | No. 05-00367-L2 |

JEANETTE ANDERSON, Representative of,
the Estate of Esther Lee Wright

............................... , Plaintiff(s)

v.

MERCK & CO., INC., et al.

............................... , Defendant(s)

```
FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX
APR 27 2005
CLERK
```

## SUMMONS

**MERCK & CO., INC. and John and Jane Does, as Sales Representatives for**
**MERCK & CO., INC.**

To the above-named Defendant: THORNTON & NAUMES, LLP

You are hereby summoned and required to serve upon ....................................

........ 100 Summer St., 30th Fl., ...... plaintiff's attorney, whose address is

........ * ........ Boston, MA 02110 ....................................

an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at .... 40 Thorndike St.,

.......... Cambridge, MA 02141 .......... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, ................... Esquire, at ..........

.......... Barbara J. Rouse ..........

the ..... 14th ..... day of ..... APRIL ..........

.............................. in the year of our Lord ..... 2005

* TRACKING ORDER, COMPLAINT and FIRST AMENDED COMPLAINT

*Edward J. Sullivan*

Clerk

NOTES.

1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.

2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on ...... APRIL 20, 2005 .................................................

~~NIX~~ ......., I served a copy of the within summons, together with a copy of the complaint in this action,

upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5)): BY HANDING TRUE AND ATTESTED COPIES TO MS. DEE MITCHELL, PROCESS CLERK AND DULY AUTHORIZED AGENT FOR THE WITHIN NAMED DEFENDANT'S REGISTERED AGENT, CT CORPORATION SYSTEM, IN HAND. SAID SERVICE WAS MADE AT 101 FEDERAL STREET, BOSTON, MA. ALSO SERVED ON DEFENDANT: TRACKING ORDER AND MOTION TO APPOINT SPECIAL PROCESS SERVER (ALLOWED).

.................................................................
CONSTABLE & COURT APPOINTED PROCESS SERVER

Dated: ...APRIL 20, 2005 ............................................................................

## N.B. TO PROCESS SERVER:

### PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

( _____ )

( ...... APRIL 20, 2005 ............, ......... )

( _____ )

COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.

MIDDLESEX ...... ss.

.............................................., Plff.

v.

.............................................., Deft.

SUMMONS
(Mass. R. Civ. P. 4)

**Commonwealth of Massachusetts**
**SUPERIOR COURT DEPARTMENT**
**THE TRIAL COURT**
**CAMBRIDGE**

MICV2005-00367

I, Anne M. Cherubino, Deputy Assistant Clerk of the Superior Court, within and for said County of Middlesex, do certify that the annexed papers are true copies made by photographic process of pleadings entered in the Superior Court on the 2nd of February, in the year of our Lord, Two Thousand Five



In testimony whereof, I hereunto set my hand and affix the seal of said Superior Court, at Cambridge, in said County, this 11th of May, in the year of our Lord, Two Thousand Five

*Anne M. Cherubino*
Deputy Assistant Clerk

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
DEPT. OF THE TRIAL COURT

JEANETTE ANDERSON, Representative of
the ESTATE OF ESTHER LEE WRIGHT,

        Plaintiff,

        v.

MERCK & CO., INC., and John and Jane
Does, as Sales Representatives for MERCK &
CO, INC.,

        Defendants.

C. A. No. 05-0367

**NOTICE OF FILING**
**NOTICE OF REMOVAL**

TO THE CLERK OF THE ABOVE-ENTITLED COURT:

Please take notice that on May 9, 2005, defendant Merck & Co., Inc. filed the attached

Notice of Removal in the United States District Court for the District of Massachusetts.

MERCK & CO., INC.
By its attorneys:

James J. Dillon (BBO# 124660)
Bradley E. Abruzzi (BBO# 651516)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02110-2600
(617) 832-1000

Dated: May 10, 2005

B3025147.1

## CERTIFICATE OF SERVICE

      I certify that a true copy of the foregoing NOTICE OF FILING NOTICE OF REMOVAL was served on May 10, 2005 by regular U.S. mail, upon:

David C. Strouss
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA  02110
**Counsel for Plaintiff Jeanette Anderson, Representative of the Estate of Esther Lee Wright**



IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

MAY 10 2005

CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JEANETTE ANDERSON, Representative of
the ESTATE OF ESTHER LEE WRIGHT,

    Plaintiff,

        v.

MERCK & CO., INC., and John and Jane
Does, as Sales Representatives for MERCK &
CO, INC.,

    Defendants.

CIVIL ACTION No.

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. § 1446, defendant Merck & Co, Inc. ("Merck") files this Notice of

Removal and states:

    1.    Merck is the single named defendant[1] in an action commenced against it by the

plaintiff, Jeanette Anderson, representative of the Estate of Esther Lee Wright, pending in

Middlesex County Superior Court in the Commonwealth of Massachusetts, captioned <u>Jeanette</u>

<u>Anderson, Representative of the Estate of Esther Lee Wright v. Merck & Co, Inc.</u>, Civil Action

No. 05-0367 (the "Superior Court action"). True copies of all process, pleadings and orders

served on Merck in the Superior Court action are attached hereto as Exhibit A and specifically

incorporated herein.

    2.    In her Complaint, Plaintiff Jeanette Anderson alleges that she is a resident of

Massachusetts. Defendant Merck is a corporation organized under the laws of the State of New

Jersey with a principal place of business at One Merck Drive, Whitehouse Station, New Jersey.

There is, therefore, complete diversity of citizenship.

---

[1]    The Complaint also lists unnamed Merck sales representatives as "John and Jane Doe" defendants. Federal
law provides, however, that "[f]or purposes of removal . . . , the citizenship of defendants sued under fictitious
names shall be disregarded." 28 U.S.C. § 1441(a).

3.     The Plaintiff brings a wrongful death action for compensatory damages on the part of Plaintiff's Decedent Esther Lee Wright, claiming that Wright "was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death." Complaint ¶ 30. Accordingly, Merck suggests that the matter in controversy in the state action will exceed the sum or value of $75,000, exclusive of interest and costs.

4.     Merck was served with a summons and a copy of plaintiff's Complaint and Demand for Jury Trial on April 20, 2005. Consequently, this notice is timely under 28 U.S.C. § 1446(b).

5.     This action is one of which this Court has jurisdiction pursuant to 28 U.S.C. § 1332 and that may be removed to this Court by Merck.

MERCK & CO., INC.
By its attorneys:

James J. Dillon (BBO# 124660)
Bradley E. Abruzzi (BBO# 651516)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02110-2600
(617) 832-1000

Dated: May 9, 2005

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing NOTICE OF REMOVAL was served on May 9, 2005 by regular U.S. Mail, upon:

David C. Strouss
Thornton & Naumes, LLP
100 Summer Street, 30th Floor
Boston, MA  02110
**Counsel for Plaintiff Jeanette Anderson, Representative of the Estate of Esther Lee Wright**


RECYCLED

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
04/20/2005
Log Number 510146365



**TO:**  Debra A Bollwage
Merck & Co., Inc.
One Merck Drive
Whitehouse Station, NJ, 08889-0100

**RE:**  **Process Served in Massachusetts**

**FOR:**  Merck & Co., Inc. (Domestic State: NJ)

RECEIVED
APR 2 1 2005

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

**TITLE OF ACTION:**  Jeanette Anderson, Representative of the Estate of Esther Lee Wright, Pltfs. Vs John and Jane Does, including Merck & Co., Inc., Dfts.

**DOCUMENT(S) SERVED:**  Summons, Complaint

**COURT/AGENCY:**  Middlesex County Superior Court House, MA
Case # 05-00367-L2

**NATURE OF ACTION:**  Product Liability Litigation - Manufacturing Defect - As a result of consuming VIOXX, plaintiff's decedent suffered from an Acute Myocardial Infarction, which substantially contributed to her death on February 8, 2002.

**ON WHOM PROCESS WAS SERVED:**  C T Corporation System, Boston, MA

**DATE AND HOUR OF SERVICE:**  By Process Server on 04/20/2005 at 15:31

**APPEARANCE OR ANSWER DUE:**  Within 20 Days

**ATTORNEY(S) / SENDER(S):**  Allyson S. Hauck
Thorton & Naumes, LLP
100 Summer Street
30th Floor
Boston, MA, 02110
617-720-1333

**ACTION ITEMS:**  SOP Papers with Transmittal, via Fed Ex Priority Overnight, 790496037079
Client's reference number#519047798999

**SIGNED:**  C T Corporation System
**PER:**  Dahriena Mitchell
**ADDRESS:**  101 Federal Street
Boston, MA, 02110
**TELEPHONE:**  617-757-6403

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action.

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: —
TORT — MOTOR VEHICLE TORT — CONTRACT —
EQUITABLE RELIEF — OTHER

## COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION

.............. MIDDLESEX .............. , ss
[seal]

No.

JEANETTE ANDERSON, Representative of
the Estate of Esther Lee Wright

05-00367-L2

....................................... , Plaintiff(s)

v.

MERCK & CO., INC., et al.

....................................... , Defendant(s)

## SUMMONS

MERCK & CO., INC. and John and Jane Does, as Sales Representatives for
MERCK & CO., INC.

To the above-named Defendant: *C/o C.T. Corporation Boston MA*
*101 Federal St.* THORNTON & NAUMES, LLP

You are hereby summoned and required to serve upon ...............................................
100 Summer St., 30th Fl.,
................................... plaintiff's attorney, whose address is ...............................
                                                                                         *
Boston, MA 02110
..................................................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also
40 Thorndike St.,
required to file your answer to the complaint in the office of the Clerk of this court at ...................................

Cambridge, MA 02141
..................................................... either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.
Barbara J. Rouse
Witness, ~~Robert A. Mulligan~~ Esquire, at ....................................................................

the .......... 14th .......... day of ............................ APRIL

..................., in the year of our Lord ........................................ . 2005

* TRACKING ORDER, COMPLAINT and FIRST AMENDED COMPLAINT

*Edward J Sullivan*

Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used
for each defendant, each should be addressed to the particular defendant.

ORM NO. SUP. — 001

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

# Commonwealth of Massachusetts
## County of Middlesex
### The Superior Court

CIVIL DOCKET# MICV2005-00367-L2

RE:   Anderson, Representative Of The Estate Of Esther Lee Wright v Merck & Company, Inc. et al

TO:David C Strouss, Esquire
   Thornton & Naumes
   100 Summer Street
   30th floor
   Boston, MA 02110

## TRACKING ORDER - A TRACK

You are hereby notified that this case is on the average (A) track as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 05/03/2005 |
| Response to the complaint filed (also see MRCP 12) | 07/02/2005 |
| All motions under MRCP 12, 19, and 20 filed | 07/02/2005 |
| All motions under MRCP 15 filed | 04/28/2006 |
| All discovery requests and depositions completed | 03/24/2007 |
| All motions under MRCP 56 served and heard | 05/23/2007 |
| Final pre-trial conference held and firm trial date set | 09/20/2007 |
| Case disposed | 02/02/2008 |

The final pre-trial deadline is **not the scheduled date of the conference.** You will be notified of that date at a later time.
**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to session L2 sitting in Cv CrtRm 2 (Lowell), Middlesex Superior Court.

Dated: 02/09/2005

Edward J. Sullivan
Clerk of the Courts

BY: Brian Burke
Assistant Clerk

Location: Cv CrtRm 2 (Lowell)
Telephone: 978-453-0201 EXT 231

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

Check website for status of case: http://ma-trialcourts.org/tcic
cvdtraca_2.wpd 2681079 inidoc01 dipacee

 

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                    SUPERIOR COURT
                                  DEPT. OF THE TRIAL
                                  COURT

                                  05-0367

)
JEANETTE ANDERSON,               )
Representative of the            )
ESTATE OF ESTHER LEE WRIGHT,     )
Plaintiff                        )        __COMPLAINT__
                                 )
                                 )
                                 )
vs.                              )
                                 )
                                 )
MERCK & CO., INC.,               )
and John and Jane Does, as       )
Sales representatives for        )
MERCK & CO., INC.,               )
        Defendants.              )



FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX
FEB 02 2005
CLERK

Now comes the Plaintiff, by her attorneys, and files the following

complaint:

1.    Party Plaintiff

        The Plaintiff, Jeanette Anderson, is the daughter of Esther Lee

Wright and the representative of the Estate of Esther Lee Wright.  Ms.

Anderson resides at 1219 Pawtucket Boulevard, Lowell, Massachusetts,

and at all relevant times herein, was a resident of the Commonwealth of

Massachusetts.

1



2.    Party Defendants

2a.  The Defendant, Merck & Co., Inc., (hereinafter "MERCK") is a corporation incorporated under the laws of the State of New Jersey, having a principal place of business in the State of New Jersey, and has conducted business in the Commonwealth of Massachusetts.  At all relevant times, hereto, MERCK was in the business of promoting, marketing, and distributing the pharmaceutical VIOXX(Rofecoxib).

2b. John and Jane Does are sales representatives for MERCK promoting and distributing VIOXX to physicians within the Commonwealth of Massachusetts.  Upon information and belief all or some of the John and Jane Doe Sales Representatives are individuals residing in the Commonwealth of Massachusetts.

As used in this Complaint, the term "Defendant" shall include any party Defendants identified in paragraphs 2a through 2b hereof, and their predecessors, which shall include, but is not limited to, any person, corporation, company or business entity:  which formed part of any combination, consolidation, merger or reorganization from which any party Defendant was created or was the surviving corporation; whose assets, stock, property, products or product line was acquired by any party Defendant; whose patent rights, trademark rights, trade secrets of goodwill was acquired by any party Defendant; or which was dominated or controlled by any party Defendant to such an extent that said party Defendant was the "alter ego" of said corporation.

2

 

## JURISDICTION

3.      The plaintiff's cause of action arises from the Defendants'

(1) transacting business in Massachusetts; (2) contracting to supply and/or

sell goods in Massachusetts; (3) doing or causing a tortuous act to be done

in Massachusetts; and/or (4) causing the consequence of a tortuous act to

occur within Massachusetts, and the Defendants do, or solicit business, or

engage in a persistent course of conduct or derive substantial revenue from

the sale of goods in Massachusetts.

## FACTS

4.      At all relevant times herein, the Defendants individually

and/or in conjunction with other persons or entities for whose conduct

they were legally responsible developed, created, manufactured, designed,

tested, labeled, packaged, distributed, supplied, marketed, sold, advertised,

and/or otherwise distributed in interstate trade and commerce the drug

VIOXX.

5.      On information and belief, the drugs were manufactured,

distributed, and sold as medication to relieve the signs and symptoms of

osteoarthritis and rheumatoid arthritis, for the management of acute pain

in adults, and the treatment of primary dysmenorrheal.

6.      In May of 1999 VIOXX was approved by the FDA. The

Defendants individually began actively and aggressively promoting,

3



marketing and selling the drug in the United States and eighty other countries. The Defendants fraudulently induced people to use its drug for osteoarthritis and rheumatoid arthritis, for the management of acute pain in adults, and the treatment of primary dysmenorrheal without adequately warning people of the risks associated with the drug that were known or should have been known to the Defendants.

7.      The Defendants engaged in a nationwide marketing scheme including but not limited to the Commonwealth of Massachusetts and participated in advertisements and promotional enhancements and literature, directly targeting consumers and various physicians and other health care providers.

8.      The Defendants, engaged in the study "VIOXX GATROINTESTINAL OUTCOMES RESEACH" ("VIGOR"). The results of the study were released in March 2000 and the findings demonstrated that VIOXX patients were observed to have a four to five fold increase in myocardial infarctions (MIs) compared to patients on Naprosyn (Naproxen).

9.      On information and believe, MERCK mislead patients and health care providers by using press releases, promotional materials and oral representations made by MERCK and through MERCK's sales representatives, to offer an untested hypothetical explanation to assert that VIOXX did not cause an increase in MIs as demonstrated in the VIGOR study.

4



10.     On September 17, 2001 a warning letter was sent by the
Department of Health and Human Services, Food and Drug
Administration (FDA), requiring MERCK to end all violative promotional
materials and send "dear Healthcare provider" letters to communicate the
accurate findings and risks of VIOXX demonstrated in the VIGOR study.

11.     Seven months later, in April 2002, MERCK sent a "Dear
Doctor" letter and made changes and additions to VIOXX label regarding
cardiovascular risks under the header "Precautions".  Even then, MERCK
did not adequately inform physicians or consumers of the full and
complete information known to the Defendants, nor did they warn against
stroke or any of the other adverse reactions linked to VIOXX that it knew
or should have known.

12.     The Defendants engaged in and/or actively participated in
inducing and/or encouraging use of VIOXX by providing incentives for its
use and by encouraging physicians and other health care providers to
prescribe it without the benefit of the full and complete information
known to the Defendants.  The Defendants disseminated false and
misleading materials which failed to disclose the risks associated with the
use of VIOXX.

13.     Upon information and belief, the Defendants also unfairly
and deceptively encouraged the use of VIOXX, by falsely misleading
potential users including the Plaintiff's decedent, Esther Lee Wright,
concerning the risks associated with its use.  By affirmative

5

 

misrepresentations and omission, the Defendants sought to create the impression that VIOXX was safe for human use and constituted a safe form of a non-steroid anti-inflammatory drug.

14. The Defendants failed to protect users from serious dangers that the Defendants knew or should have known would result from the use of VIOXX.

15. The Defendants failed to adequately disclose, warn, instruct and/or provide guidance to consumers concerning the health hazards and risks associated with the use of VIOXX, which were known or should have been known to the Defendants.

16. The Defendants engaged in the distribution and/or use of VIOXX without providing full and complete instructions and/or warnings.

17. The Defendants failed to adequately and properly test and/or research the health effects of VIOXX.

18. The Defendants engaged in this conduct knowing that VIOXX was being prescribed to people who were not aware of the serious cardiovascular risks of the drug.

19. The promotional campaign initiated, created, monitored, an/or supported by the Defendants was intended to fraudulently induce and misrepresent in an affirmative manner the belief that through the use of VIOXX, arthritis and other pain could be managed with no serious or significant side effects or adverse reactions that would be experienced by the users of the drugs. This information was false, misleading, and

6

 

fraudulent. At all times relevant herein, the Defendants intentionally withheld and/or failed to adequately communicate known and/or potential health hazards and risks associated with the use of the drugs. The promotional campaign continued to create the false impression of the successful and safe use of the drug, while at the same time the Defendants were not communicating information regarding risks and complications that were known by or should have been known to the Defendants.

20.    The Defendants fraudulently, deceptively, and unfairly misrepresented the facts regarding VIOXX, including but not limited to adequate testing of the drug and the efficiency, severity, frequency, and discomfort of side effects and adverse health effects caused by VIOXX.

21.    As a result of the Defendants' deceptive and unfair advertising and marketing practices, VIOXX was distributed throughout the United States and upon information and belief, over 1 million prescriptions for VIOXX were written in the United States, including Massachusetts, prior to the removal of VIOXX from the market.

22.    The Plaintiff's decedent began to consume 25mg of VIOXX on May 16, 2000 up to the date of her death on February 8, 2002.

23.    The Plaintiff's decedent suffered and died from an acute myocardial infarction, on February 8, 2002, while taking VIOXX. The death certificate lists Acute Myocardial Infarction as the immediate cause of death.

7

 

24.    On September 30, 2004, the Defendant MERCK announced a voluntary worldwide withdrawal of VIOXX from the market after the Adenomatous Polyp Prevention trial(APPROVe) confirmed the cardiovascular risks previously found in the VIGOR study.

## COUNT I

## NEGLIGENCE

25.    The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

26.    It was the duty of the Defendants to use and exercise reasonable and due care in the manufacture, development, design, formulation, testing, inspection, production, advertisement, promotion, marketing, sale and distribution of VIOXX.

27.    It was also the duty of the Defendant to provide detailed and adequate instructions relative to the proper and safe use of VIOXX and to provide detailed and adequate warnings concerning any and all dangers, characteristics, and potentialities of VIOXX, including known or suspected risks from the use of VIOXX, and to prevent a product which they knew or with reasonable care should have known was unreasonably dangerous and defective from entering the channels of trade.

28.    It was the continuing duty of the Defendants to advise and warn purchasers, consumer, users, medical providers and other health care

8



providers of all dangers, characteristics, potentialities and defects

discovered subsequent to their initial marketing or sale of VIOXX.

29.    Yet, nevertheless, wholly disregarding the aforesaid duties,

the Defendants breached their duties by:

a. unreasonable, careless and negligent conduct in the
design, development, formulation, manufacture, advertisement,
promotion, marketing, sale, and distribution of VIOXX;

b. failing to adequately test VIOXX;

c. failing to warn or instruct, or adequately warn or
adequately instruct, physicians and medical providers concerning the risk
or likelihood of, _inter alia_, cardiovascular events in individuals who have
consumed VIOXX and other medical complications associated with the
use of VIOXX which Defendants had or should have had knowledge of;

d.  failing to warn or instruct, or adequately warn or
adequately instruct the Plaintiff's decedent and consumers of VIOXX
concerning the risk or likelihood of, _inter alia_, suffering cardiovascular
events and other medical complications associated with the use of VIOXX
which Defendants had or should have had knowledge of;

e. by placing in the channels of trade a drug which
Defendants knew or with reasonable care should have known was
unreasonably dangerous and unsafe and by placing VIOXX in the channel
of trade in a manner which the Defendants foresaw, or in the exercise of
reasonable care ought to have foreseen, would carry VIOXX into contact
with persons such as the Plaintiff's decedent, and by failing to use
reasonable care to prevent injury to such persons, including the Plaintiff's
decedent.

f. marketing an inherently unsafe and/or dangerous drug;

g. misrepresenting that VIOXX was safe when the
Defendants knew, or in the exercise of reasonable care should have
known, that VIOXX was dangerous and unsafe.

9



h. failing to provide adequate field and clinical testing both before and after marketing VIOXX;

i. failing to disclose known risks and instead minimizing the risks associated with the use of VIOXX in promotional campaigns and materials and oral representations.

j. failing to adequately warn of reactions, side effect, and complications associated with the use of VIOXX.

30.     As a direct and proximate result of the unreasonable, careless, and negligent conduct of the Defendants, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death.  Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff, demands compensatory damages, plus interests and costs.

## COUNT II

## BREACH OF EXPRESSED AND IMPLIED WARRANTIES

31.     The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

32.     The Plaintiff's decedent, Esther Lee Wright was a person whom the Defendants could reasonably have expected to use, consume, or be affected by the Defendants' products within the meaning of Massachusetts General Laws c. 106, §2-318, as the Defendants knew or had reason to know that their products could cause serious cardiovascular injuries.



33.    The Defendants expressly and impliedly warranted that VIOXX was safe, merchantable, fit for consumption, and for the use for which it was intended and fit for its particular purpose to relieve the signs and symptoms of osteoarthritis and rheumatoid arthritis, the management of acute pain in adults, and the treatment of primary dysmenorrheal.

34.    The Defendants knew or had reason to know of the particular purposes for which VIOXX would be used.

35.    The Plaintiff's decedent relied upon the Defendants' skill or judgment to furnish or select a suitable product.

36.    The Defendants breached said warranties to the Plaintiff's decedent because VIOXX was unsafe and not of merchantable quality.

WHEREFORE Plaintiff demands compensatory damages, plus interests and costs.

## COUNT III
## DEFECTIVE DESIGN/STRICT LIABILITY

37.    Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

38.    At all times material hereto, Defendants engaged in the business of researching, formulating, testing, developing, designing, licensing, assembling, compounding, marketing, promoting, distributing, detailing, and/or selling VIOXX that were defective and unreasonably dangerous to consumers, including Plaintiff's decedent.

39.    At all times material hereto, VIOXX which was researched, formulated, tested, developed, designed, licensed, assembled,

11

 

compounded, marketed, promoted, distributed, detailed, and/or sold by

Defendants was expected to reach, and did reach, prescribing physicians

and consumers including Plaintiff's decedent, without substantial change

in the condition in which they was sold.

40.    At all times material hereto, VIOXX was in a defective and

unreasonably dangerous condition at the time it was placed in the stream

of commerce in ways which include, but are not limited to, one or more of

the following particulars:

    A.    When placed in the stream of commerce, VIOXX
        contained unreasonably dangerous design defects and was
        not reasonably safe as intended to be used, subjecting
        Plaintiff's decedent to risks which exceeded the benefits of
        VIOXX;

    B.    When placed in the stream of commerce, VIOXX was
        defective in design and formulation, making use of VIOXX
        more dangerous than an ordinary consumer would expect;

    C.    VIOXX was insufficiently tested;

    D.    The intended use of VIOXX caused harmful side effects
        which outweighed any potential utility; and

    E.    VIOXX was not safe for its intended use for arthritis and
        acute pain.

41.    But for the aforementioned defective and unreasonably

dangerous conditions, VIOXX would not have been prescribed to

Plaintiff's decedent, she would not have ingested VIOXX, and she would

not have sustained the injuries alleged herein.

42.    As a direct and proximate result of the unreasonable,

careless, and negligent conduct of the Defendants, the Plaintiff's decedent,

Esther Lee Wright, was caused to sustain severe and permanent injuries

including an Acute Myocardial Infarction, resulting in death.  Prior to her



death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff demands judgment against Defendants for compensatory damages plus interest and costs.

## COUNT IV
## FAILURE TO WARN/STRICT LIABILITY

43.    Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

44.    VIOXX was defective and unreasonably dangerous when it left the possession of Defendants in that VIOXX contained warnings which were misleading regarding the purported benefits associated with VIOXX and were inadequate and insufficient to alert physicians and consumers, such as Plaintiff's decedent, to the dangerous risks and reactions associated with VIOXX, including, but not limited to, cardiovascular risks, including myocardial infarction and other serious and life threatening side affects.

45.    The physicians prescribed VIOXX to Plaintiff's decedent for the intended purpose.

46.    Neither the prescribing physicians nor Plaintiff's decedent could have discovered any defect in VIOXX through the exercise of reasonable care.

47.    Defendants are held to the level of knowledge of an expert in the field.

13

 

48.    The prescribing physicians did not have substantially the same knowledge as an adequate warning from the manufacturer, distributor or sales representative should have communicated to the prescribing physician.

49.    The warnings that were given by Defendants to the prescribing physicians were not adequate, accurate, or clear, and were ambiguous and intentionally misleading.

50.    Defendants had a continuing duty to warn the prescribing physicians and Plaintiff's decedent of the dangers associated with VIOXX.

51.    As a direct and legal result of Defendants' failure to warn, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death.  Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff demands judgment against Defendants for compensation and damages, plus interest and costs.

## COUNT V
## FRAUDULENT/NEGLIGENT MISREPRESENTATION

52.    Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

53.    Defendants, having undertaken the manufacturing, marketing, prescription dispensing, distributing and promotion of VIOXX owed a duty to provide complete and accurate information regarding VIOXX to Plaintiff's decedent, her physicians, and anyone else

14

 

Defendants knew or should have known would ingest or prescribe

VIOXX.

54.    Defendants misrepresented material facts regarding the

safety and efficacy of VIOXX, and failed to inform Plaintiff's decedent,

the public and Plaintiff's decedent prescribing physician of these material

facts.

55.    Defendants fraudulently and/or negligently misrepresented

to Plaintiff's decedent physicians, the FDA, and the general public that

VIOXX was safe and effective, that the benefits of taking VIOXX

outweighed any risks, and/or fraudulently and/or negligently

misrepresented and concealed safety and effectiveness information

regarding the product, including but not limited to VIOXX's propensity to

cause serious physical harm. The continuous and ongoing course of action

constituting fraudulent and/or negligent misrepresentation on Plaintiff's

decedent started at least as early as 2000, if not earlier, and continued

through repeated acts and non-disclosure every year since then throughout

the United States and elsewhere.

56.    VIOXX was in fact unsafe and the use of VIOXX posed a

risk of injury and death which outweighed the purported benefits of its

use, such that injury was in fact caused to Plaintiff's decedent and others.

57.    Defendants made fraudulent and/or negligent

misrepresentations regarding adverse information at a time when it knew,

or should have known, that VIOXX had defects, dangers, and

15

 

characteristics that were other than what Defendants had represented to the

prescribing doctors or other dispensing entities, the FDA, and the

consuming public, including Plaintiff's decedent. Specifically,

Defendants misrepresented the following:

       a.  It was dangerous to prescribe VIOXX;

       b.  VIOXX carried risks of serious, life threatening adverse
          effects;

    58.    The misrepresentations alleged above were perpetuated

directly and indirectly by the Defendants.

    59.    The fraudulent and/or negligent misrepresentations of

Defendants took the form of, among other things, express and implied

statements, publicly disseminated misinformation, misinformation

provided to regulatory agencies, inadequate, incomplete and misleading

warnings about the subject products, failure to disclose important safety

and injury information regarding the products while having a duty to

disclose to Plaintiff's decedent and others such information.

    60.    Defendants knew or should have known that these

representations were misleading at the time they were made or omitted,

and made the representations with the intent or purpose that Plaintiff's

decedent and her physicians would rely on them, leading to the use of

VIOXX by Plaintiff's decedent.

    61.    At the time of Defendants' fraudulent and/or negligent

misrepresentations, Plaintiff's decedent and her physicians were unaware

16

 

of the inaccuracy of the statements being made and believed them to be true.

62.     Both Plaintiff's decedent and her physician justifiably relied on and were induced by the misrepresentations and relied on the absence of adverse safety information in the prescription and ingestion of VIOXX.

63.     Defendants had a post-sale duty to warn Plaintiff's decedent and/or her physicians about the potential risks and complications associated with VIOXX in a timely manner.

64.     The misrepresentations by Defendants constitute a continuing tort.

65.     Defendants made the statements and/or omissions with the intention that Plaintiff's decedent and her prescribing physicians or other dispensing entities and the consuming public would rely on such or the absence of such information in selecting VIOXX as a treatment for arthritis and pain management.

66.     As a direct and legal result of the fraudulent and/or negligent misrepresentations of Defendants, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death. Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

17

 

WHEREFORE, the Plaintiff demands judgment against Defendants for compensatory damages, plus interest and costs.

### COUNT VI
### WRONGFUL DEATH

67. The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

68. As a result of consuming VIOXX, Plaintiff's decedent suffered from an acute myocardial infarction, which substantially contributed to her death on February 8, 2002.

69. Plaintiff's decedent is survived by her family, who by reason of said death have been deprived of society, companionship, comfort, guidance, counsel, and advice of the said Plaintiff's decedent. In addition, the estate of Plaintiff's decedent has incurred reasonable funeral and burial expenses as a result of the death of Plaintiff's decedent.

WHEREFORE, the Plaintiff Jeanette Anderson, as the Representative of the Estate of Esther Lee Wright, demands compensatory and punitive damages, plus interests and costs.

### COUNT VII
### MALICIOUS, WILLFUL, WANTON, AND RECKLESS
### CONDUCT OR GROSS NEGLIGENCE

70. The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

18



71. At least by 2000, the Defendants, or some of them, possessed medical and scientific data indicating that VIOXX posed potentially serious cardiovascular risks and as early as this date the Defendants, or some of them, possessed medical and scientific data indicating that the use of VIOXX was potentially hazardous to the health and safety of Esther Lee Wright and others in her position.

72. Prompted by pecuniary motives, the Defendants ignored and failed to act upon such medical and scientific data and deprived the public, and particularly the users, from access to said medical and scientific data, thereby depriving them of informed and free choice as to whether or not to consume VIOXX.

73. The Defendants acted maliciously, willfully, wantonly, recklessly, or with gross negligence, by continuing to market VIOXX with reckless disregard for the health and safety of the Plaintiff's decedent an others users and consumers, knowing the dangerous characteristics and propensities of VIOXX, but still depriving those affected by the dangers from information about those dangers.

74. Because the Defendants acted maliciously, willfully, wantonly, recklessly, or with gross negligence, in marketing their hazardous product, in ignoring the medical and scientific data which was available to them, and depriving consumers, users, and the general public from that medical and scientific data, the Plaintiff is entitled to punitivie damages.

19

 

WHEREFORE, the Plaintiff demands punitive damages in addition to the damages demanded in Counts I-V.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues.

WHEREFORE, the Plaintiff prays:

1. The judgment enter against the Defendants on all Counts of this Complaint;

2. That Plaintiff be awarded full, fair and complete compensation, for which she is legally entitled;

3. that Plaintiff be awarded all appropriate costs, attorney's fees and interest authorized by law;

4. That the court enter such other relief as is determined just and appropriate.

Respectfully Submitted,

David C. Strouss (BBO#546253)
Marilyn T. McGoldrick,(BBO#561766)
Allyson S. Hauck (BBO#659547)
THORNTON & NAUMES, LLP
100 Summer Street, 30th Floor
Boston, MA 02110
(617)720-1333

Dated: February 2, 2005

20

 

# COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss.**

**SUPERIOR COURT
DEPT. OF THE TRIAL
COURT**

|  |  |
|---|---|
| JEANETTE ANDERSON,<br>Representative of the<br>ESTATE OF ESTHER LEE WRIGHT,<br>Plaintiff<br><br>vs.<br><br>MERCK & CO., INC.,<br>and John and Jane Does, as<br>Sales representatives for<br>MERCK & CO., INC.,<br>    Defendants. | **FIRST<br>AMENDED<br>COMPLAINT** |



Now comes the Plaintiff, by her attorneys, and files the following

complaint:

1.    **Party Plaintiff**

        The Plaintiff, Jeanette Anderson, is the daughter of Esther Lee

Wright and the representative of the Estate of Esther Lee Wright.  Ms.

Anderson resides at 1219 Pawtucket Boulevard, Lowell, Massachusetts,

and at all relevant times herein, was a resident of the Commonwealth of

Massachusetts.

1



2.    <u>Party Defendants</u>

      2a. The Defendant, Merck & Co., Inc., (hereinafter "MERCK") is a corporation incorporated under the laws of the State of New Jersey, having a principal place of business in the State of New Jersey, and has conducted business in the Commonwealth of Massachusetts. At all relevant times, hereto, MERCK was in the business of promoting, marketing, and distributing the pharmaceutical VIOXX(Rofecoxib).

      2b. John and Jane Does are sales representatives for MERCK promoting and distributing VIOXX to physicians within the Commonwealth of Massachusetts. Upon information and belief all or some of the John and Jane Doe Sales Representatives are individuals residing in the Commonwealth of Massachusetts.

      As used in this Complaint, the term "Defendant" shall include any party Defendants identified in paragraphs 2a through 2b hereof, and their predecessors, which shall include, but is not limited to, any person, corporation, company or business entity: which formed part of any combination, consolidation, merger or reorganization from which any party Defendant was created or was the surviving corporation; whose assets, stock, property, products or product line was acquired by any party Defendant; whose patent rights, trademark rights, trade secrets of goodwill was acquired by any party Defendant; or which was dominated or controlled by any party Defendant to such an extent that said party Defendant was the "alter ego" of said corporation.

2




## JURISDICTION

3.      The plaintiff's cause of action arises from the Defendants'

(1) transacting business in Massachusetts; (2) contracting to supply and/or

sell goods in Massachusetts; (3) doing or causing a tortuous act to be done

in Massachusetts; and/or (4) causing the consequence of a tortuous act to

occur within Massachusetts, and the Defendants do, or solicit business, or

engage in a persistent course of conduct or derive substantial revenue from

the sale of goods in Massachusetts.

## FACTS

4.      At all relevant times herein, the Defendants individually

and/or in conjunction with other persons or entities for whose conduct

they were legally responsible developed, created, manufactured, designed,

tested, labeled, packaged, distributed, supplied, marketed, sold, advertised,

and/or otherwise distributed in interstate trade and commerce the drug

VIOXX.

5.      On information and belief, the drugs were manufactured,

distributed, and sold as medication to relieve the signs and symptoms of

osteoarthritis and rheumatoid arthritis, for the management of acute pain

in adults, and the treatment of primary dysmenorrheal.

6.      In May of 1999 VIOXX was approved by the FDA. The

Defendants individually began actively and aggressively promoting,

3



marketing and selling the drug in the United States and eighty other countries. The Defendants fraudulently induced people to use its drug for osteoarthritis and rheumatoid arthritis, for the management of acute pain in adults, and the treatment of primary dysmenorrheal without adequately warning people of the risks associated with the drug that were known or should have been known to the Defendants.

7.    The Defendants engaged in a nationwide marketing scheme including but not limited to the Commonwealth of Massachusetts and participated in advertisements and promotional enhancements and literature, directly targeting consumers and various physicians and other health care providers.

8.    The Defendants, engaged in the study "VIOXX GATROINTESTINAL OUTCOMES RESEACH" ("VIGOR"). The results of the study were released in March 2000 and the findings demonstrated that VIOXX patients were observed to have a four to five fold increase in myocardial infarctions (MIs) compared to patients on Naprosyn (Naproxen).

9.    On information and believe, MERCK mislead patients and health care providers by using press releases, promotional materials and oral representations made by MERCK and through MERCK's sales representatives, to offer an untested hypothetical explanation to assert that VIOXX did not cause an increase in MIs as demonstrated in the VIGOR study.

4



10.    On September 17, 2001 a warning letter was sent by the Department of Health and Human Services, Food and Drug Administration (FDA), requiring MERCK to end all violative promotional materials and send "dear Healthcare provider" letters to communicate the accurate findings and risks of VIOXX demonstrated in the VIGOR study.

11.    Seven months later, in April 2002, MERCK sent a "Dear Doctor" letter and made changes and additions to VIOXX label regarding cardiovascular risks under the header "Precautions". Even then, MERCK did not adequately inform physicians or consumers of the full and complete information known to the Defendants, nor did they warn against stroke or any of the other adverse reactions linked to VIOXX that it knew or should have known.

12.    The Defendants engaged in and/or actively participated in inducing and/or encouraging use of VIOXX by providing incentives for its use and by encouraging physicians and other health care providers to prescribe it without the benefit of the full and complete information known to the Defendants. The Defendants disseminated false and misleading materials which failed to disclose the risks associated with the use of VIOXX.

13.    Upon information and belief, the Defendants also unfairly and deceptively encouraged the use of VIOXX, by falsely misleading potential users including the Plaintiff's decedent, Esther Lee Wright, concerning the risks associated with its use. By affirmative

5



misrepresentations and omission, the Defendants sought to create the impression that VIOXX was safe for human use and constituted a safe form of a non-steroid anti-inflammatory drug.

14.    The Defendants failed to protect users from serious dangers that the Defendants knew or should have known would result from the use of VIOXX.

15.    The Defendants failed to adequately disclose, warn, instruct and/or provide guidance to consumers concerning the health hazards and risks associated with the use of VIOXX, which were known or should have been known to the Defendants.

16.    The Defendants engaged in the distribution and/or use of VIOXX without providing full and complete instructions and/or warnings.

17.    The Defendants failed to adequately and properly test and/or research the health effects of VIOXX.

18.    The Defendants engaged in this conduct knowing that VIOXX was being prescribed to people who were not aware of the serious cardiovascular risks of the drug.

19.    The promotional campaign initiated, created, monitored, an/or supported by the Defendants was intended to fraudulently induce and misrepresent in an affirmative manner the belief that through the use of VIOXX, arthritis and other pain could be managed with no serious or significant side effects or adverse reactions that would be experienced by the users of the drugs.  This information was false, misleading, and

 

fraudulent.  At all times relevant herein, the Defendants intentionally withheld and/or failed to adequately communicate known and/or potential health hazards and risks associated with the use of the drugs.  The promotional campaign continued to create the false impression of the successful and safe use of the drug, while at the same time the Defendants were not communicating information regarding risks and complications that were known by or should have been known to the Defendants.

20.    The Defendants fraudulently, deceptively, and unfairly misrepresented the facts regarding VIOXX, including but not limited to adequate testing of the drug and the efficiency, severity, frequency, and discomfort of side effects and adverse health effects caused by VIOXX.

21.    As a result of the Defendants' deceptive and unfair advertising and marketing practices, VIOXX was distributed throughout the United States and upon information and belief, over 1 million prescriptions for VIOXX were written in the United States, including Massachusetts, prior to the removal of VIOXX from the market.

22.    The Plaintiff's decedent began to consume 25mg of VIOXX on May 16, 2000 up to the date of her death on February 8, 2002.

23.    The Plaintiff's decedent suffered and died from an acute myocardial infarction, on February 8, 2002, while taking VIOXX.  The death certificate lists Acute Myocardial Infarction as the immediate cause of death.

7



24.    On September 30, 2004, the Defendant MERCK announced a voluntary worldwide withdrawal of VIOXX from the market after the Adenomatous Polyp Prevention trial(APPROVe) confirmed the cardiovascular risks previously found in the VIGOR study.

## COUNT I

## NEGLIGENCE

25.    The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

26.    It was the duty of the Defendants to use and exercise reasonable and due care in the manufacture, development, design, formulation, testing, inspection, production, advertisement, promotion, marketing, sale and distribution of VIOXX.

27.    It was also the duty of the Defendant to provide detailed and adequate instructions relative to the proper and safe use of VIOXX and to provide detailed and adequate warnings concerning any and all dangers, characteristics, and potentialities of VIOXX, including known or suspected risks from the use of VIOXX, and to prevent a product which they knew or with reasonable care should have known was unreasonably dangerous and defective from entering the channels of trade.

28.    It was the continuing duty of the Defendants to advise and warn purchasers, consumer, users, medical providers and other health care

8



providers of all dangers, characteristics, potentialities and defects discovered subsequent to their initial marketing or sale of VIOXX.

29.    Yet, nevertheless, wholly disregarding the aforesaid duties, the Defendants breached their duties by:

a. unreasonable, careless and negligent conduct in the design, development, formulation, manufacture, advertisement, promotion, marketing, sale, and distribution of VIOXX;

b. failing to adequately test VIOXX;

c. failing to warn or instruct, or adequately warn or adequately instruct, physicians and medical providers concerning the risk or likelihood of, inter alia, cardiovascular events in individuals who have consumed VIOXX and other medical complications associated with the use of VIOXX which Defendants had or should have had knowledge of;

d. failing to warn or instruct, or adequately warn or adequately instruct the Plaintiff's decedent and consumers of VIOXX concerning the risk or likelihood of, inter alia, suffering cardiovascular events and other medical complications associated with the use of VIOXX which Defendants had or should have had knowledge of;

e. by placing in the channels of trade a drug which Defendants knew or with reasonable care should have known was unreasonably dangerous and unsafe and by placing VIOXX in the channel of trade in a manner which the Defendants foresaw, or in the exercise of reasonable care ought to have foreseen, would carry VIOXX into contact with persons such as the Plaintiff's decedent, and by failing to use reasonable care to prevent injury to such persons, including the Plaintiff's decedent.

f. marketing an inherently unsafe and/or dangerous drug;

g. misrepresenting that VIOXX was safe when the Defendants knew, or in the exercise of reasonable care should have known, that VIOXX was dangerous and unsafe.

9



h. failing to provide adequate field and clinical testing both before and after marketing VIOXX;

i. failing to disclose known risks and instead minimizing the risks associated with the use of VIOXX in promotional campaigns and materials and oral representations.

j. failing to adequately warn of reactions, side effect, and complications associated with the use of VIOXX.

30.    As a direct and proximate result of the unreasonable, careless, and negligent conduct of the Defendants, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death.  Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff, demands compensatory damages, plus interests and costs.

## COUNT II

## BREACH OF EXPRESSED AND IMPLIED WARRANTIES

31.    The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

32.    The Plaintiff's decedent, Esther Lee Wright was a person whom the Defendants could reasonably have expected to use, consume, or be affected by the Defendants' products within the meaning of Massachusetts General Laws c. 106, §2-318, as the Defendants knew or had reason to know that their products could cause serious cardiovascular injuries.

10



33.    The Defendants expressly and impliedly warranted that VIOXX was safe, merchantable, fit for consumption, and for the use for which it was intended and fit for its particular purpose to relieve the signs and symptoms of osteoarthritis and rheumatoid arthritis, the management of acute pain in adults, and the treatment of primary dysmenorrheal.

34.    The Defendants knew or had reason to know of the particular purposes for which VIOXX would be used.

35.    The Plaintiff's decedent relied upon the Defendants' skill or judgment to furnish or select a suitable product.

36.    The Defendants breached said warranties to the Plaintiff's decedent because VIOXX was unsafe and not of merchantable quality.

WHEREFORE Plaintiff demands compensatory damages, plus interests and costs.

## COUNT III
## DEFECTIVE DESIGN/STRICT LIABILITY

37.    Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

38.    At all times material hereto, Defendants engaged in the business of researching, formulating, testing, developing, designing, licensing, assembling, compounding, marketing, promoting, distributing, detailing, and/or selling VIOXX that were defective and unreasonably dangerous to consumers, including Plaintiff's decedent.

39.    At all times material hereto, VIOXX which was researched, formulated, tested, developed, designed, licensed, assembled,

11

 

compounded, marketed, promoted, distributed, detailed, and/or sold by

Defendants was expected to reach, and did reach, prescribing physicians

and consumers including Plaintiff's decedent, without substantial change

in the condition in which they was sold.

40.    At all times material hereto, VIOXX was in a defective and

unreasonably dangerous condition at the time it was placed in the stream

of commerce in ways which include, but are not limited to, one or more of

the following particulars:

A.    When placed in the stream of commerce, VIOXX
       contained unreasonably dangerous design defects and was
       not reasonably safe as intended to be used, subjecting
       Plaintiff's decedent to risks which exceeded the benefits of
       VIOXX;
B.    When placed in the stream of commerce, VIOXX was
       defective in design and formulation, making use of VIOXX
       more dangerous than an ordinary consumer would expect;
C.    VIOXX was insufficiently tested;
D.    The intended use of VIOXX caused harmful side effects
       which outweighed any potential utility; and
E.    VIOXX was not safe for its intended use for arthritis and
       acute pain.

41.    But for the aforementioned defective and unreasonably

dangerous conditions, VIOXX would not have been prescribed to

Plaintiff's decedent, she would not have ingested VIOXX, and she would

not have sustained the injuries alleged herein.

42.    As a direct and proximate result of the unreasonable,

careless, and negligent conduct of the Defendants, the Plaintiff's decedent,

Esther Lee Wright, was caused to sustain severe and permanent injuries

including an Acute Myocardial Infarction, resulting in death.  Prior to her

12



death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff demands judgment against Defendants for compensatory damages plus interest and costs.

## COUNT IV
## FAILURE TO WARN/STRICT LIABILITY

43.     Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

44.     VIOXX was defective and unreasonably dangerous when it left the possession of Defendants in that VIOXX contained warnings which were misleading regarding the purported benefits associated with VIOXX and were inadequate and insufficient to alert physicians and consumers, such as Plaintiff's decedent, to the dangerous risks and reactions associated with VIOXX, including, but not limited to, cardiovascular risks, including myocardial infarction and other serious and life threatening side affects.

45.     The physicians prescribed VIOXX to Plaintiff's decedent for the intended purpose.

46.     Neither the prescribing physicians nor Plaintiff's decedent could have discovered any defect in VIOXX through the exercise of reasonable care.

47.     Defendants are held to the level of knowledge of an expert in the field.

13

48.    The prescribing physicians did not have substantially the same knowledge as an adequate warning from the manufacturer, distributor or sales representative should have communicated to the prescribing physician.

49.    The warnings that were given by Defendants to the prescribing physicians were not adequate, accurate, or clear, and were ambiguous and intentionally misleading.

50.    Defendants had a continuing duty to warn the prescribing physicians and Plaintiff's decedent of the dangers associated with VIOXX.

51.    As a direct and legal result of Defendants' failure to warn, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death.  Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff demands judgment against Defendants for compensation and damages, plus interest and costs.

## COUNT V
## FRAUDULENT/NEGLIGENT MISREPRESENTATION

52.    Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

53.    Defendants, having undertaken the manufacturing, marketing, prescription dispensing, distributing and promotion of VIOXX owed a duty to provide complete and accurate information regarding VIOXX to Plaintiff's decedent, her physicians, and anyone else

14

 

Defendants knew or should have known would ingest or prescribe VIOXX.

54.     Defendants misrepresented material facts regarding the safety and efficacy of VIOXX, and failed to inform Plaintiff's decedent, the public and Plaintiff's decedent prescribing physician of these material facts.

55.     Defendants fraudulently and/or negligently misrepresented to Plaintiff's decedent physicians, the FDA, and the general public that VIOXX was safe and effective, that the benefits of taking VIOXX outweighed any risks, and/or fraudulently and/or negligently misrepresented and concealed safety and effectiveness information regarding the product, including but not limited to VIOXX's propensity to cause serious physical harm. The continuous and ongoing course of action constituting fraudulent and/or negligent misrepresentation on Plaintiff's decedent started at least as early as 2000, if not earlier, and continued through repeated acts and non-disclosure every year since then throughout the United States and elsewhere.

56.     VIOXX was in fact unsafe and the use of VIOXX posed a risk of injury and death which outweighed the purported benefits of its use, such that injury was in fact caused to Plaintiff's decedent and others.

57.     Defendants made fraudulent and/or negligent misrepresentations regarding adverse information at a time when it knew, or should have known, that VIOXX had defects, dangers, and

15

 

characteristics that were other than what Defendants had represented to the

prescribing doctors or other dispensing entities, the FDA, and the

consuming public, including Plaintiff's decedent. Specifically,

Defendants misrepresented the following:

        a. It was dangerous to prescribe VIOXX;
        b. VIOXX carried risks of serious, life threatening adverse
           effects;

    58.    The misrepresentations alleged above were perpetuated

directly and indirectly by the Defendants.

    59.    The fraudulent and/or negligent misrepresentations of

Defendants took the form of, among other things, express and implied

statements, publicly disseminated misinformation, misinformation

provided to regulatory agencies, inadequate, incomplete and misleading

warnings about the subject products, failure to disclose important safety

and injury information regarding the products while having a duty to

disclose to Plaintiff's decedent and others such information.

    60.    Defendants knew or should have known that these

representations were misleading at the time they were made or omitted,

and made the representations with the intent or purpose that Plaintiff's

decedent and her physicians would rely on them, leading to the use of

VIOXX by Plaintiff's decedent.

    61.    At the time of Defendants' fraudulent and/or negligent

misrepresentations, Plaintiff's decedent and her physicians were unaware

16



of the inaccuracy of the statements being made and believed them to be true.

62.     Both Plaintiff's decedent and her physician justifiably relied on and were induced by the misrepresentations and relied on the absence of adverse safety information in the prescription and ingestion of VIOXX.

63.     Defendants had a post-sale duty to warn Plaintiff's decedent and/or her physicians about the potential risks and complications associated with VIOXX in a timely manner.

64.     The misrepresentations by Defendants constitute a continuing tort.

65.     Defendants made the statements and/or omissions with the intention that Plaintiff's decedent and her prescribing physicians or other dispensing entities and the consuming public would rely on such or the absence of such information in selecting VIOXX as a treatment for arthritis and pain management.

66.     As a direct and legal result of the fraudulent and/or negligent misrepresentations of Defendants, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death. Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

17

 

WHEREFORE, the Plaintiff demands judgment against Defendants for compensatory damages, plus interest and costs.

## COUNT VI
## WRONGFUL DEATH

67. The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

68. As a result of consuming VIOXX, Plaintiff's decedent suffered from an acute myocardial infarction, which substantially contributed to her death on February 8, 2002.

69. Plaintiff's decedent is survived by her family, who by reason of said death have been deprived of society, companionship, comfort, guidance, counsel, and advice of the said Plaintiff's decedent. In addition, the estate of Plaintiff's decedent has incurred reasonable funeral and burial expenses as a result of the death of Plaintiff's decedent.

WHEREFORE, the Plaintiff Jeanette Anderson, as the Representative of the Estate of Esther Lee Wright, demands compensatory and punitive damages, plus interests and costs.

## COUNT VII
## MALICIOUS, WILLFUL, WANTON, AND RECKLESS
## CONDUCT OR GROSS NEGLIGENCE

70. The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

18



71.  At least by 2000, the Defendants, or some of them, possessed medical and scientific data indicating that VIOXX posed potentially serious cardiovascular risks and as early as this date the Defendants, or some of them, possessed medical and scientific data indicating that the use of VIOXX was potentially hazardous to the health and safety of Esther Lee Wright and others in her position.

72.  Prompted by pecuniary motives, the Defendants ignored and failed to act upon such medical and scientific data and deprived the public, and particularly the users, from access to said medical and scientific data, thereby depriving them of informed and free choice as to whether or not to consume VIOXX.

73.  The Defendants acted maliciously, willfully, wantonly, recklessly, or with gross negligence, by continuing to market VIOXX with reckless disregard for the health and safety of the Plaintiff's decedent an others users and consumers, knowing the dangerous characteristics and propensities of VIOXX, but still depriving those affected by the dangers from information about those dangers.

74.  Because the Defendants acted maliciously, willfully, wantonly, recklessly, or with gross negligence, in marketing their hazardous product, in ignoring the medical and scientific data which was available to them, and depriving consumers, users, and the general public from that medical and scientific data, the Plaintiff is entitled to punitive damages.

19

 

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues.

WHEREFORE, the Plaintiff prays:

1. The judgment enter against the Defendants on all Counts of this Complaint;

2. That Plaintiff be awarded full, fair and complete compensation, for which she is legally entitled;

3. that Plaintiff be awarded all appropriate costs, attorney's fees and interest authorized by law;

4. That the court enter such other relief as is determined just and appropriate.

Respectfully Submitted,

David C. Strouss (BBO#546253)
Marilyn T. McGoldrick,(BBO#561766)
Allyson S. Hauck (BBO#659547)
THORNTON & NAUMES, LLP
100 Summer Street, 30th Floor
Boston, MA 02110
(617)720-1333

Dated: February 23, 2005

21

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss.**

**SUPERIOR COURT**
**DEPT. OF THE TRIAL**
**COURT**           05-0367



FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR

**FEB 0 2 2005**

**JEANETTE ANDERSON,**
**Representative of the**
**ESTATE OF ESTHER LEE WRIGHT,**
**Plaintiff**

**vs.**

**MERCK & CO., INC.,**
**and John and Jane Does, as**
**Sales representatives for**
**MERCK & CO., INC.,**
**        Defendants.**

4193A000002/02/05CIVIL        240.00
4193A000002/02/05SUR CHARGE    15.00
4193A000002/02/05SECC          20.00

COMPLAINT

        Now comes the Plaintiff, by her attorneys, and files the following

complaint:

1.    <u>Party Plaintiff</u>

        The Plaintiff, Jeanette Anderson, is the daughter of Esther Lee

Wright and the representative of the Estate of Esther Lee Wright.  Ms.

Anderson resides at 1219 Pawtucket Boulevard, Lowell, Massachusetts,

and at all relevant times herein, was a resident of the Commonwealth of

Massachusetts.

1

2.    Party Defendants

2a. The Defendant, Merck & Co., Inc., (hereinafter "MERCK") is a corporation incorporated under the laws of the State of New Jersey, having a principal place of business in the State of New Jersey, and has conducted business in the Commonwealth of Massachusetts. At all relevant times, hereto, MERCK was in the business of promoting, marketing, and distributing the pharmaceutical VIOXX(Rofecoxib).

2b. John and Jane Does are sales representatives for MERCK promoting and distributing VIOXX to physicians within the Commonwealth of Massachusetts. Upon information and belief all or some of the John and Jane Doe Sales Representatives are individuals residing in the Commonwealth of Massachusetts.

As used in this Complaint, the term "Defendant" shall include any party Defendants identified in paragraphs 2a through 2b hereof, and their predecessors, which shall include, but is not limited to, any person, corporation, company or business entity: which formed part of any combination, consolidation, merger or reorganization from which any party Defendant was created or was the surviving corporation; whose assets, stock, property, products or product line was acquired by any party Defendant; whose patent rights, trademark rights, trade secrets of goodwill was acquired by any party Defendant; or which was dominated or controlled by any party Defendant to such an extent that said party Defendant was the "alter ego" of said corporation.

2

## **JURISDICTION**

3.     The plaintiff's cause of action arises from the Defendants'

(1) transacting business in Massachusetts; (2) contracting to supply and/or

sell goods in Massachusetts; (3) doing or causing a tortuous act to be done

in Massachusetts; and/or (4) causing the consequence of a tortuous act to

occur within Massachusetts, and the Defendants do, or solicit business, or

engage in a persistent course of conduct or derive substantial revenue from

the sale of goods in Massachusetts.

## **FACTS**

4.     At all relevant times herein, the Defendants individually

and/or in conjunction with other persons or entities for whose conduct

they were legally responsible developed, created, manufactured, designed,

tested, labeled, packaged, distributed, supplied, marketed, sold, advertised,

and/or otherwise distributed in interstate trade and commerce the drug

VIOXX.

5.     On information and belief, the drugs were manufactured,

distributed, and sold as medication to relieve the signs and symptoms of

osteoarthritis and rheumatoid arthritis, for the management of acute pain

in adults, and the treatment of primary dysmenorrheal.

6.     In May of 1999 VIOXX was approved by the FDA. The

Defendants individually began actively and aggressively promoting,

3

marketing and selling the drug in the United States and eighty other countries. The Defendants fraudulently induced people to use its drug for osteoarthritis and rheumatoid arthritis, for the management of acute pain in adults, and the treatment of primary dysmenorrheal without adequately warning people of the risks associated with the drug that were known or should have been known to the Defendants.

7.    The Defendants engaged in a nationwide marketing scheme including but not limited to the Commonwealth of Massachusetts and participated in advertisements and promotional enhancements and literature, directly targeting consumers and various physicians and other health care providers.

8.    The Defendants, engaged in the study "VIOXX GATROINTESTINAL OUTCOMES RESEACH" ("VIGOR"). The results of the study were released in March 2000 and the findings demonstrated that VIOXX patients were observed to have a four to five fold increase in myocardial infarctions (MIs) compared to patients on Naprosyn (Naproxen).

9.    On information and believe, MERCK mislead patients and health care providers by using press releases, promotional materials and oral representations made by MERCK and through MERCK's sales representatives, to offer an untested hypothetical explanation to assert that VIOXX did not cause an increase in MIs as demonstrated in the VIGOR study.

10.     On September 17, 2001 a warning letter was sent by the
Department of Health and Human Services, Food and Drug
Administration (FDA), requiring MERCK to end all violative promotional
materials and send "dear Healthcare provider" letters to communicate the
accurate findings and risks of VIOXX demonstrated in the VIGOR study.

11.     Seven months later, in April 2002, MERCK sent a "Dear
Doctor" letter and made changes and additions to VIOXX label regarding
cardiovascular risks under the header "Precautions". Even then, MERCK
did not adequately inform physicians or consumers of the full and
complete information known to the Defendants, nor did they warn against
stroke or any of the other adverse reactions linked to VIOXX that it knew
or should have known.

12.     The Defendants engaged in and/or actively participated in
inducing and/or encouraging use of VIOXX by providing incentives for its
use and by encouraging physicians and other health care providers to
prescribe it without the benefit of the full and complete information
known to the Defendants. The Defendants disseminated false and
misleading materials which failed to disclose the risks associated with the
use of VIOXX.

13.     Upon information and belief, the Defendants also unfairly
and deceptively encouraged the use of VIOXX, by falsely misleading
potential users including the Plaintiff's decedent, Esther Lee Wright,
concerning the risks associated with its use. By affirmative

5

misrepresentations and omission, the Defendants sought to create the impression that VIOXX was safe for human use and constituted a safe form of a non-steroid anti-inflammatory drug.

14.    The Defendants failed to protect users from serious dangers that the Defendants knew or should have known would result from the use of VIOXX.

15.    The Defendants failed to adequately disclose, warn, instruct and/or provide guidance to consumers concerning the health hazards and risks associated with the use of VIOXX, which were known or should have been known to the Defendants.

16.    The Defendants engaged in the distribution and/or use of VIOXX without providing full and complete instructions and/or warnings.

17.    The Defendants failed to adequately and properly test and/or research the health effects of VIOXX.

18.    The Defendants engaged in this conduct knowing that VIOXX was being prescribed to people who were not aware of the serious cardiovascular risks of the drug.

19.    The promotional campaign initiated, created, monitored, an/or supported by the Defendants was intended to fraudulently induce and misrepresent in an affirmative manner the belief that through the use of VIOXX, arthritis and other pain could be managed with no serious or significant side effects or adverse reactions that would be experienced by the users of the drugs. This information was false, misleading, and

6

fraudulent. At all times relevant herein, the Defendants intentionally withheld and/or failed to adequately communicate known and/or potential health hazards and risks associated with the use of the drugs. The promotional campaign continued to create the false impression of the successful and safe use of the drug, while at the same time the Defendants were not communicating information regarding risks and complications that were known by or should have been known to the Defendants.

20.     The Defendants fraudulently, deceptively, and unfairly misrepresented the facts regarding VIOXX, including but not limited to adequate testing of the drug and the efficiency, severity, frequency, and discomfort of side effects and adverse health effects caused by VIOXX.

21.     As a result of the Defendants' deceptive and unfair advertising and marketing practices, VIOXX was distributed throughout the United States and upon information and belief, over 1 million prescriptions for VIOXX were written in the United States, including Massachusetts, prior to the removal of VIOXX from the market.

22.     The Plaintiff's decedent began to consume 25mg of VIOXX on May 16, 2000 up to the date of her death on February 8, 2002.

23.     The Plaintiff's decedent suffered and died from an acute myocardial infarction, on February 8, 2002, while taking VIOXX. The death certificate lists Acute Myocardial Infarction as the immediate cause of death.

7

24.    On September 30, 2004, the Defendant MERCK
announced a voluntary worldwide withdrawal of VIOXX from the market
after the Adenomatous Polyp Prevention trial(APPROVe) confirmed the
cardiovascular risks previously found in the VIGOR study.

## COUNT I

## NEGLIGENCE

25.    The Plaintiff adopts by reference all of the allegations
above, each inclusive, as though fully set forth herein.

26.    It was the duty of the Defendants to use and exercise
reasonable and due care in the manufacture, development, design,
formulation, testing, inspection, production, advertisement, promotion,
marketing, sale and distribution of VIOXX.

27.    It was also the duty of the Defendant to provide detailed
and adequate instructions relative to the proper and safe use of VIOXX
and to provide detailed and adequate warnings concerning any and all
dangers, characteristics, and potentialities of VIOXX, including known or
suspected risks from the use of VIOXX, and to prevent a product which
they knew or with reasonable care should have known was unreasonably
dangerous and defective from entering the channels of trade.

28.    It was the continuing duty of the Defendants to advise and
warn purchasers, consumer, users, medical providers and other health care

providers of all dangers, characteristics, potentialities and defects discovered subsequent to their initial marketing or sale of VIOXX.

29.    Yet, nevertheless, wholly disregarding the aforesaid duties, the Defendants breached their duties by:

a. unreasonable, careless and negligent conduct in the design, development, formulation, manufacture, advertisement, promotion, marketing, sale, and distribution of VIOXX;

b. failing to adequately test VIOXX;

c. failing to warn or instruct, or adequately warn or adequately instruct, physicians and medical providers concerning the risk or likelihood of, inter alia, cardiovascular events in individuals who have consumed VIOXX and other medical complications associated with the use of VIOXX which Defendants had or should have had knowledge of;

d.  failing to warn or instruct, or adequately warn or adequately instruct the Plaintiff's decedent and consumers of VIOXX concerning the risk or likelihood of, inter alia, suffering cardiovascular events and other medical complications associated with the use of VIOXX which Defendants had or should have had knowledge of;

e. by placing in the channels of trade a drug which Defendants knew or with reasonable care should have known was unreasonably dangerous and unsafe and by placing VIOXX in the channel of trade in a manner which the Defendants foresaw, or in the exercise of reasonable care ought to have foreseen, would carry VIOXX into contact with persons such as the Plaintiff's decedent, and by failing to use reasonable care to prevent injury to such persons, including the Plaintiff's decedent.

f. marketing an inherently unsafe and/or dangerous drug;

g. misrepresenting that VIOXX was safe when the Defendants knew, or in the exercise of reasonable care should have known, that VIOXX was dangerous and unsafe.

9

h. failing to provide adequate field and clinical testing both before and after marketing VIOXX;

i. failing to disclose known risks and instead minimizing the risks associated with the use of VIOXX in promotional campaigns and materials and oral representations.

j. failing to adequately warn of reactions, side effect, and complications associated with the use of VIOXX.

30.    As a direct and proximate result of the unreasonable, careless, and negligent conduct of the Defendants, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death. Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff, demands compensatory damages, plus interests and costs.

## COUNT II

## BREACH OF EXPRESSED AND IMPLIED WARRANTIES

31.    The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

32.    The Plaintiff's decedent, Esther Lee Wright was a person whom the Defendants could reasonably have expected to use, consume, or be affected by the Defendants' products within the meaning of Massachusetts General Laws c. 106, §2-318, as the Defendants knew or had reason to know that their products could cause serious cardiovascular injuries.

10

33.    The Defendants expressly and impliedly warranted that VIOXX was safe, merchantable, fit for consumption, and for the use for which it was intended and fit for its particular purpose to relieve the signs and symptoms of osteoarthritis and rheumatoid arthritis, the management of acute pain in adults, and the treatment of primary dysmenorrheal.

34.    The Defendants knew or had reason to know of the particular purposes for which VIOXX would be used.

35.    The Plaintiff's decedent relied upon the Defendants' skill or judgment to furnish or select a suitable product.

36.    The Defendants breached said warranties to the Plaintiff's decedent because VIOXX was unsafe and not of merchantable quality.

WHEREFORE Plaintiff demands compensatory damages, plus interests and costs.

## COUNT III
## DEFECTIVE DESIGN/STRICT LIABILITY

37.    Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

38.    At all times material hereto, Defendants engaged in the business of researching, formulating, testing, developing, designing, licensing, assembling, compounding, marketing, promoting, distributing, detailing, and/or selling VIOXX that were defective and unreasonably dangerous to consumers, including Plaintiff's decedent.

39.    At all times material hereto, VIOXX which was researched, formulated, tested, developed, designed, licensed, assembled,

11

compounded, marketed, promoted, distributed, detailed, and/or sold by

Defendants was expected to reach, and did reach, prescribing physicians

and consumers including Plaintiff's decedent, without substantial change

in the condition in which they was sold.

40.    At all times material hereto, VIOXX was in a defective and

unreasonably dangerous condition at the time it was placed in the stream

of commerce in ways which include, but are not limited to, one or more of

the following particulars:

A.    When placed in the stream of commerce, VIOXX
contained unreasonably dangerous design defects and was
not reasonably safe as intended to be used, subjecting
Plaintiff's decedent to risks which exceeded the benefits of
VIOXX;

B.    When placed in the stream of commerce, VIOXX was
defective in design and formulation, making use of VIOXX
more dangerous than an ordinary consumer would expect;

C.    VIOXX was insufficiently tested;

D.    The intended use of VIOXX caused harmful side effects
which outweighed any potential utility; and

E.    VIOXX was not safe for its intended use for arthritis and
acute pain.

41.    But for the aforementioned defective and unreasonably

dangerous conditions, VIOXX would not have been prescribed to

Plaintiff's decedent, she would not have ingested VIOXX, and she would

not have sustained the injuries alleged herein.

42.    As a direct and proximate result of the unreasonable,

careless, and negligent conduct of the Defendants, the Plaintiff's decedent,

Esther Lee Wright, was caused to sustain severe and permanent injuries

including an Acute Myocardial Infarction, resulting in death. Prior to her

death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff demands judgment against Defendants for compensatory damages plus interest and costs.

## COUNT IV
## FAILURE TO WARN/STRICT LIABILITY

43.     Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

44.     VIOXX was defective and unreasonably dangerous when it left the possession of Defendants in that VIOXX contained warnings which were misleading regarding the purported benefits associated with VIOXX and were inadequate and insufficient to alert physicians and consumers, such as Plaintiff's decedent, to the dangerous risks and reactions associated with VIOXX, including, but not limited to, cardiovascular risks, including myocardial infarction and other serious and life threatening side affects.

45.     The physicians prescribed VIOXX to Plaintiff's decedent for the intended purpose.

46.     Neither the prescribing physicians nor Plaintiff's decedent could have discovered any defect in VIOXX through the exercise of reasonable care.

47.     Defendants are held to the level of knowledge of an expert in the field.

13

48.    The prescribing physicians did not have substantially the same knowledge as an adequate warning from the manufacturer, distributor or sales representative should have communicated to the prescribing physician.

49.    The warnings that were given by Defendants to the prescribing physicians were not adequate, accurate, or clear, and were ambiguous and intentionally misleading.

50.    Defendants had a continuing duty to warn the prescribing physicians and Plaintiff's decedent of the dangers associated with VIOXX.

51.    As a direct and legal result of Defendants' failure to warn, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death. Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff demands judgment against Defendants for compensation and damages, plus interest and costs.

### COUNT V
### FRAUDULENT/NEGLIGENT MISREPRESENTATION

52.    Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

53.    Defendants, having undertaken the manufacturing, marketing, prescription dispensing, distributing and promotion of VIOXX owed a duty to provide complete and accurate information regarding VIOXX to Plaintiff's decedent, her physicians, and anyone else

Defendants knew or should have known would ingest or prescribe VIOXX.

54.    Defendants misrepresented material facts regarding the safety and efficacy of VIOXX, and failed to inform Plaintiff's decedent, the public and Plaintiff's decedent prescribing physician of these material facts.

55.    Defendants fraudulently and/or negligently misrepresented to Plaintiff's decedent physicians, the FDA, and the general public that VIOXX was safe and effective, that the benefits of taking VIOXX outweighed any risks, and/or fraudulently and/or negligently misrepresented and concealed safety and effectiveness information regarding the product, including but not limited to VIOXX's propensity to cause serious physical harm. The continuous and ongoing course of action constituting fraudulent and/or negligent misrepresentation on Plaintiff's decedent started at least as early as 2000, if not earlier, and continued through repeated acts and non-disclosure every year since then throughout the United States and elsewhere.

56.    VIOXX was in fact unsafe and the use of VIOXX posed a risk of injury and death which outweighed the purported benefits of its use, such that injury was in fact caused to Plaintiff's decedent and others.

57.    Defendants made fraudulent and/or negligent misrepresentations regarding adverse information at a time when it knew, or should have known, that VIOXX had defects, dangers, and

15

characteristics that were other than what Defendants had represented to the

prescribing doctors or other dispensing entities, the FDA, and the

consuming public, including Plaintiff's decedent. Specifically,

Defendants misrepresented the following:

> a.  It was dangerous to prescribe VIOXX;
> b.  VIOXX carried risks of serious, life threatening adverse
>     effects;

58.    The misrepresentations alleged above were perpetuated

directly and indirectly by the Defendants.

59.    The fraudulent and/or negligent misrepresentations of

Defendants took the form of, among other things, express and implied

statements, publicly disseminated misinformation, misinformation

provided to regulatory agencies, inadequate, incomplete and misleading

warnings about the subject products, failure to disclose important safety

and injury information regarding the products while having a duty to

disclose to Plaintiff's decedent and others such information.

60.    Defendants knew or should have known that these

representations were misleading at the time they were made or omitted,

and made the representations with the intent or purpose that Plaintiff's

decedent and her physicians would rely on them, leading to the use of

VIOXX by Plaintiff's decedent.

61.    At the time of Defendants' fraudulent and/or negligent

misrepresentations, Plaintiff's decedent and her physicians were unaware

of the inaccuracy of the statements being made and believed them to be true.

62. Both Plaintiff's decedent and her physician justifiably relied on and were induced by the misrepresentations and relied on the absence of adverse safety information in the prescription and ingestion of VIOXX.

63. Defendants had a post-sale duty to warn Plaintiff's decedent and/or her physicians about the potential risks and complications associated with VIOXX in a timely manner.

64. The misrepresentations by Defendants constitute a continuing tort.

65. Defendants made the statements and/or omissions with the intention that Plaintiff's decedent and her prescribing physicians or other dispensing entities and the consuming public would rely on such or the absence of such information in selecting VIOXX as a treatment for arthritis and pain management.

66. As a direct and legal result of the fraudulent and/or negligent misrepresentations of Defendants, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death. Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff demands judgment against Defendants for compensatory damages, plus interest and costs.

## COUNT VI
## WRONGFUL DEATH

67. The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

68. As a result of consuming VIOXX, Plaintiff's decedent suffered from an acute myocardial infarction, which substantially contributed to her death on February 8, 2002.

69. Plaintiff's decedent is survived by her family, who by reason of said death have been deprived of society, companionship, comfort, guidance, counsel, and advice of the said Plaintiff's decedent. In addition, the estate of Plaintiff's decedent has incurred reasonable funeral and burial expenses as a result of the death of Plaintiff's decedent.

WHEREFORE, the Plaintiff Jeanette Anderson, as the Representative of the Estate of Esther Lee Wright, demands compensatory and punitive damages, plus interests and costs.

## COUNT VII
## MALICIOUS, WILLFUL, WANTON, AND RECKLESS
## CONDUCT OR GROSS NEGLIGENCE

70. The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

18

71. At least by 2000, the Defendants, or some of them, possessed medical and scientific data indicating that VIOXX posed potentially serious cardiovascular risks and as early as this date the Defendants, or some of them, possessed medical and scientific data indicating that the use of VIOXX was potentially hazardous to the health and safety of Esther Lee Wright and others in her position.

72. Prompted by pecuniary motives, the Defendants ignored and failed to act upon such medical and scientific data and deprived the public, and particularly the users, from access to said medical and scientific data, thereby depriving them of informed and free choice as to whether or not to consume VIOXX.

73. The Defendants acted maliciously, willfully, wantonly, recklessly, or with gross negligence, by continuing to market VIOXX with reckless disregard for the health and safety of the Plaintiff's decedent an others users and consumers, knowing the dangerous characteristics and propensities of VIOXX, but still depriving those affected by the dangers from information about those dangers.

74. Because the Defendants acted maliciously, willfully, wantonly, recklessly, or with gross negligence, in marketing their hazardous product, in ignoring the medical and scientific data which was available to them, and depriving consumers, users, and the general public from that medical and scientific data, the Plaintiff is entitled to punitivie damages.

WHEREFORE, the Plaintiff demands punitive damages in addition to the damages demanded in Counts I-V.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues.

WHEREFORE, the Plaintiff prays:

1. The judgment enter against the Defendants on all Counts of this Complaint;

2. That Plaintiff be awarded full, fair and complete compensation, for which she is legally entitled;

3. that Plaintiff be awarded all appropriate costs, attorney's fees and interest authorized by law;

4. That the court enter such other relief as is determined just and appropriate.

Respectfully Submitted,

_____
David C. Strouss (BBO#546253)
Marilyn T. McGoldrick,(BBO#561766)
Allyson S. Hauck (BBO#659547)
THORNTON & NAUMES, LLP
100 Summer Street, 30th Floor
Boston, MA 02110
(617)720-1333

Dated: February 2, 2005

20

| | DOCKET NO.(S) | Trial Court of Massachusetts |
|---|---|---|
| **CIVIL ACTION COVER SHEET** | 05-0367 | Superior Court Department County:_____ |

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Jeanetie Anderson, Expected Representative of the Estate of Esther Lee Wright | Merck & Co., Inc., et al. |

| ATTORNEY, FIRM, ADDRESS AND TELEPHONE (617) 720-1333 | ATTORNEY (if known) |
|---|---|
| David C. Strouss, Esquire, BBO# 546253 Marilyn T. McGoldrick, Esquire, BBO# 561766 Allyson Hauck, Esquire, BBO# 659547 THORNTON & NAUMES, LLP 100 Summer St., 30th fl., Boston, MA 02110 Board of Bar Overseers number: Lised above | |

**Origin code and track designation**

Place and x in one box only:

- ☒ 1.FO1 Original Complaint
- ☐ 2.FO2 Removal to Sup.Ct. C.231, s.104 (Before trial) (F)
- ☐ 3.FO3 Retransfer to Sup.Ct.C.231,s.102C(X)

- ☐ 4.F04 District Court Appeal c.231,s.97 & 104 (After trial) (X)
- ☐ 5.F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P.60) (X)
- ☐ 6.E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See Reverse Side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B05 | Product Liability | ( A ) | ( x ) Yes    ( ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $.see attached...
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $.see attached...
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $.see attached...
4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $.see attached...
5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $.see attached...
Subtotal $.see attached...
B. Documented lost wages and compensation to date . . . . . . . . . . . . . . . . . . . . . . $.see attached...
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . . . . . . . . . $.see attached...
D. Reasonably anticipated future medical and hospital expenses . . . . . . . . . . . . . . . . $.see attached...
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $.see attached...
F. Other documented items of damages (describe)
$.see attached...

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
Plaintiff's decedent suffered and died from an acute myocardial infarction as a direct result of her use of Vioxx which was manufactured, sold, promoted and supplied by the Defendants.   In light of the damages, Plaintiff believes there is a
reasonable likelihood that recovery will be in excess of $25,000.
$................
**TOTAL $900,000........**

*FILED IN THE OFFICE OF THE CLERK OF THE COURTS FOR THE COUNT... FEB 02 2005 ...CLERK*

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

**TOTAL $................**

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record _____    DATE: Feb 2 2005
Allyson Hauck , Esq.

9/

# COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss.**

**SUPERIOR COURT
DEPT. OF THE TRIAL
COURT**    05-367 Ld

|  |  |  |
|---|---|---|
| **JEANETTE ANDERSON,**<br>**Representative of the**<br>**ESTATE OF ESTHER LEE WRIGHT,**<br>**Plaintiff** | ) ) ) ) ) ) ) | **FIRST<br>AMENDED<br>COMPLAINT** |
| **vs.** | ) ) ) |  |
| **MERCK & CO., INC.,**<br>**and John and Jane Does, as**<br>**Sales representatives for**<br>**MERCK & CO., INC.,**<br>     **Defendants.** | ) ) ) ) ) ) |  |

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

FEB 23 2005

Edward J. Sullivan
CLERK

Now comes the Plaintiff, by her attorneys, and files the following

complaint:

1.     Party Plaintiff

The Plaintiff, Jeanette Anderson, is the daughter of Esther Lee

Wright and the representative of the Estate of Esther Lee Wright.  Ms.

Anderson resides at 1219 Pawtucket Boulevard, Lowell, Massachusetts,

and at all relevant times herein, was a resident of the Commonwealth of

Massachusetts.

1

2.    Party Defendants

2a.  The Defendant, Merck & Co., Inc., (hereinafter "MERCK") is a corporation incorporated under the laws of the State of New Jersey, having a principal place of business in the State of New Jersey, and has conducted business in the Commonwealth of Massachusetts.  At all relevant times, hereto, MERCK was in the business of promoting, marketing, and distributing the pharmaceutical VIOXX(Rofecoxib).

2b. John and Jane Does are sales representatives for MERCK promoting and distributing VIOXX to physicians within the Commonwealth of Massachusetts.  Upon information and belief all or some of the John and Jane Doe Sales Representatives are individuals residing in the Commonwealth of Massachusetts.

As used in this Complaint, the term "Defendant" shall include any party Defendants identified in paragraphs 2a through 2b hereof, and their predecessors, which shall include, but is not limited to, any person, corporation, company or business entity:  which formed part of any combination, consolidation, merger or reorganization from which any party Defendant was created or was the surviving corporation; whose assets, stock, property, products or product line was acquired by any party Defendant; whose patent rights, trademark rights, trade secrets of goodwill was acquired by any party Defendant; or which was dominated or controlled by any party Defendant to such an extent that said party Defendant was the "alter ego" of said corporation.

2

## JURISDICTION

3.      The plaintiff's cause of action arises from the Defendants'

(1) transacting business in Massachusetts; (2) contracting to supply and/or

sell goods in Massachusetts; (3) doing or causing a tortuous act to be done

in Massachusetts; and/or (4) causing the consequence of a tortuous act to

occur within Massachusetts, and the Defendants do, or solicit business, or

engage in a persistent course of conduct or derive substantial revenue from

the sale of goods in Massachusetts.

## FACTS

4.      At all relevant times herein, the Defendants individually

and/or in conjunction with other persons or entities for whose conduct

they were legally responsible developed, created, manufactured, designed,

tested, labeled, packaged, distributed, supplied, marketed, sold, advertised,

and/or otherwise distributed in interstate trade and commerce the drug

VIOXX.

5.      On information and belief, the drugs were manufactured,

distributed, and sold as medication to relieve the signs and symptoms of

osteoarthritis and rheumatoid arthritis, for the management of acute pain

in adults, and the treatment of primary dysmenorrheal.

6.      In May of 1999 VIOXX was approved by the FDA. The

Defendants individually began actively and aggressively promoting,

3

marketing and selling the drug in the United States and eighty other countries. The Defendants fraudulently induced people to use its drug for osteoarthritis and rheumatoid arthritis, for the management of acute pain in adults, and the treatment of primary dysmenorrheal without adequately warning people of the risks associated with the drug that were known or should have been known to the Defendants.

7.    The Defendants engaged in a nationwide marketing scheme including but not limited to the Commonwealth of Massachusetts and participated in advertisements and promotional enhancements and literature, directly targeting consumers and various physicians and other health care providers.

8.    The Defendants, engaged in the study "VIOXX GATROINTESTINAL OUTCOMES RESEACH" ("VIGOR"). The results of the study were released in March 2000 and the findings demonstrated that VIOXX patients were observed to have a four to five fold increase in myocardial infarctions (MIs) compared to patients on Naprosyn (Naproxen).

9.    On information and believe, MERCK mislead patients and health care providers by using press releases, promotional materials and oral representations made by MERCK and through MERCK's sales representatives, to offer an untested hypothetical explanation to assert that VIOXX did not cause an increase in MIs as demonstrated in the VIGOR study.

4

10. On September 17, 2001 a warning letter was sent by the Department of Health and Human Services, Food and Drug Administration (FDA), requiring MERCK to end all violative promotional materials and send "dear Healthcare provider" letters to communicate the accurate findings and risks of VIOXX demonstrated in the VIGOR study.

11. Seven months later, in April 2002, MERCK sent a "Dear Doctor" letter and made changes and additions to VIOXX label regarding cardiovascular risks under the header "Precautions". Even then, MERCK did not adequately inform physicians or consumers of the full and complete information known to the Defendants, nor did they warn against stroke or any of the other adverse reactions linked to VIOXX that it knew or should have known.

12. The Defendants engaged in and/or actively participated in inducing and/or encouraging use of VIOXX by providing incentives for its use and by encouraging physicians and other health care providers to prescribe it without the benefit of the full and complete information known to the Defendants. The Defendants disseminated false and misleading materials which failed to disclose the risks associated with the use of VIOXX.

13. Upon information and belief, the Defendants also unfairly and deceptively encouraged the use of VIOXX, by falsely misleading potential users including the Plaintiff's decedent, Esther Lee Wright, concerning the risks associated with its use. By affirmative

5

misrepresentations and omission, the Defendants sought to create the impression that VIOXX was safe for human use and constituted a safe form of a non-steroid anti-inflammatory drug.

14.    The Defendants failed to protect users from serious dangers that the Defendants knew or should have known would result from the use of VIOXX.

15.    The Defendants failed to adequately disclose, warn, instruct and/or provide guidance to consumers concerning the health hazards and risks associated with the use of VIOXX, which were known or should have been known to the Defendants.

16.    The Defendants engaged in the distribution and/or use of VIOXX without providing full and complete instructions and/or warnings.

17.    The Defendants failed to adequately and properly test and/or research the health effects of VIOXX.

18.    The Defendants engaged in this conduct knowing that VIOXX was being prescribed to people who were not aware of the serious cardiovascular risks of the drug.

19.    The promotional campaign initiated, created, monitored, an/or supported by the Defendants was intended to fraudulently induce and misrepresent in an affirmative manner the belief that through the use of VIOXX, arthritis and other pain could be managed with no serious or significant side effects or adverse reactions that would be experienced by the users of the drugs.  This information was false, misleading, and

6

fraudulent. At all times relevant herein, the Defendants intentionally withheld and/or failed to adequately communicate known and/or potential health hazards and risks associated with the use of the drugs. The promotional campaign continued to create the false impression of the successful and safe use of the drug, while at the same time the Defendants were not communicating information regarding risks and complications that were known by or should have been known to the Defendants.

20.    The Defendants fraudulently, deceptively, and unfairly misrepresented the facts regarding VIOXX, including but not limited to adequate testing of the drug and the efficiency, severity, frequency, and discomfort of side effects and adverse health effects caused by VIOXX.

21.    As a result of the Defendants' deceptive and unfair advertising and marketing practices, VIOXX was distributed throughout the United States and upon information and belief, over 1 million prescriptions for VIOXX were written in the United States, including Massachusetts, prior to the removal of VIOXX from the market.

22.    The Plaintiff's decedent began to consume 25mg of VIOXX on May 16, 2000 up to the date of her death on February 8, 2002.

23.    The Plaintiff's decedent suffered and died from an acute myocardial infarction, on February 8, 2002, while taking VIOXX. The death certificate lists Acute Myocardial Infarction as the immediate cause of death.

7

24. On September 30, 2004, the Defendant MERCK announced a voluntary worldwide withdrawal of VIOXX from the market after the Adenomatous Polyp Prevention trial(APPROVe) confirmed the cardiovascular risks previously found in the VIGOR study.

## COUNT I

### NEGLIGENCE

25. The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

26. It was the duty of the Defendants to use and exercise reasonable and due care in the manufacture, development, design, formulation, testing, inspection, production, advertisement, promotion, marketing, sale and distribution of VIOXX.

27. It was also the duty of the Defendant to provide detailed and adequate instructions relative to the proper and safe use of VIOXX and to provide detailed and adequate warnings concerning any and all dangers, characteristics, and potentialities of VIOXX, including known or suspected risks from the use of VIOXX, and to prevent a product which they knew or with reasonable care should have known was unreasonably dangerous and defective from entering the channels of trade.

28. It was the continuing duty of the Defendants to advise and warn purchasers, consumer, users, medical providers and other health care

providers of all dangers, characteristics, potentialities and defects

discovered subsequent to their initial marketing or sale of VIOXX.

29.    Yet, nevertheless, wholly disregarding the aforesaid duties,
the Defendants breached their duties by:

a. unreasonable, careless and negligent conduct in the
design, development, formulation, manufacture, advertisement,
promotion, marketing, sale, and distribution of VIOXX;

b. failing to adequately test VIOXX;

c. failing to warn or instruct, or adequately warn or
adequately instruct, physicians and medical providers concerning the risk
or likelihood of, inter alia, cardiovascular events in individuals who have
consumed VIOXX and other medical complications associated with the
use of VIOXX which Defendants had or should have had knowledge of;

d. failing to warn or instruct, or adequately warn or
adequately instruct the Plaintiff's decedent and consumers of VIOXX
concerning the risk or likelihood of, inter alia, suffering cardiovascular
events and other medical complications associated with the use of VIOXX
which Defendants had or should have had knowledge of;

e. by placing in the channels of trade a drug which
Defendants knew or with reasonable care should have known was
unreasonably dangerous and unsafe and by placing VIOXX in the channel
of trade in a manner which the Defendants foresaw, or in the exercise of
reasonable care ought to have foreseen, would carry VIOXX into contact
with persons such as the Plaintiff's decedent, and by failing to use
reasonable care to prevent injury to such persons, including the Plaintiff's
decedent.

f. marketing an inherently unsafe and/or dangerous drug;

g. misrepresenting that VIOXX was safe when the
Defendants knew, or in the exercise of reasonable care should have
known, that VIOXX was dangerous and unsafe.

9

h. failing to provide adequate field and clinical testing both before and after marketing VIOXX;

i. failing to disclose known risks and instead minimizing the risks associated with the use of VIOXX in promotional campaigns and materials and oral representations.

j. failing to adequately warn of reactions, side effect, and complications associated with the use of VIOXX.

30.    As a direct and proximate result of the unreasonable, careless, and negligent conduct of the Defendants, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death. Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff, demands compensatory damages, plus interests and costs.

## COUNT II

### BREACH OF EXPRESSED AND IMPLIED WARRANTIES

31.    The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

32.    The Plaintiff's decedent, Esther Lee Wright was a person whom the Defendants could reasonably have expected to use, consume, or be affected by the Defendants' products within the meaning of Massachusetts General Laws c. 106, §2-318, as the Defendants knew or had reason to know that their products could cause serious cardiovascular injuries.

10

33.    The Defendants expressly and impliedly warranted that VIOXX was safe, merchantable, fit for consumption, and for the use for which it was intended and fit for its particular purpose to relieve the signs and symptoms of osteoarthritis and rheumatoid arthritis, the management of acute pain in adults, and the treatment of primary dysmenorrheal.

34.    The Defendants knew or had reason to know of the particular purposes for which VIOXX would be used.

35.    The Plaintiff's decedent relied upon the Defendants' skill or judgment to furnish or select a suitable product.

36.    The Defendants breached said warranties to the Plaintiff's decedent because VIOXX was unsafe and not of merchantable quality.

WHEREFORE Plaintiff demands compensatory damages, plus interests and costs.

## COUNT III
## DEFECTIVE DESIGN/STRICT LIABILITY

37.    Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

38.    At all times material hereto, Defendants engaged in the business of researching, formulating, testing, developing, designing, licensing, assembling, compounding, marketing, promoting, distributing, detailing, and/or selling VIOXX that were defective and unreasonably dangerous to consumers, including Plaintiff's decedent.

39.    At all times material hereto, VIOXX which was researched, formulated, tested, developed, designed, licensed, assembled,

11

compounded, marketed, promoted, distributed, detailed, and/or sold by

Defendants was expected to reach, and did reach, prescribing physicians

and consumers including Plaintiff's decedent, without substantial change

in the condition in which they was sold.

40.    At all times material hereto, VIOXX was in a defective and

unreasonably dangerous condition at the time it was placed in the stream

of commerce in ways which include, but are not limited to, one or more of

the following particulars:

A.    When placed in the stream of commerce, VIOXX
contained unreasonably dangerous design defects and was
not reasonably safe as intended to be used, subjecting
Plaintiff's decedent to risks which exceeded the benefits of
VIOXX;

B.    When placed in the stream of commerce, VIOXX was
defective in design and formulation, making use of VIOXX
more dangerous than an ordinary consumer would expect;

C.    VIOXX was insufficiently tested;

D.    The intended use of VIOXX caused harmful side effects
which outweighed any potential utility; and

E.    VIOXX was not safe for its intended use for arthritis and
acute pain.

41.    But for the aforementioned defective and unreasonably

dangerous conditions, VIOXX would not have been prescribed to

Plaintiff's decedent, she would not have ingested VIOXX, and she would

not have sustained the injuries alleged herein.

42.    As a direct and proximate result of the unreasonable,

careless, and negligent conduct of the Defendants, the Plaintiff's decedent,

Esther Lee Wright, was caused to sustain severe and permanent injuries

including an Acute Myocardial Infarction, resulting in death. Prior to her

12

death, Esther Lee Wright endured great physical pain and suffering and
incurred substantial medical expenses.

WHEREFORE, the Plaintiff demands judgment against
Defendants for compensatory damages plus interest and costs.

## COUNT IV
## FAILURE TO WARN/STRICT LIABILITY

43.    Plaintiff adopts by reference all of the allegations above,
each inclusive, as though fully set forth herein.

44.    VIOXX was defective and unreasonably dangerous when it
left the possession of Defendants in that VIOXX contained warnings
which were misleading regarding the purported benefits associated with
VIOXX and were inadequate and insufficient to alert physicians and
consumers, such as Plaintiff's decedent, to the dangerous risks and
reactions associated with VIOXX, including, but not limited to,
cardiovascular risks, including myocardial infarction and other serious and
life threatening side affects.

45.    The physicians prescribed VIOXX to Plaintiff's decedent
for the intended purpose.

46.    Neither the prescribing physicians nor Plaintiff's decedent
could have discovered any defect in VIOXX through the exercise of
reasonable care.

47.    Defendants are held to the level of knowledge of an expert
in the field.

13

48.    The prescribing physicians did not have substantially the same knowledge as an adequate warning from the manufacturer, distributor or sales representative should have communicated to the prescribing physician.

49.    The warnings that were given by Defendants to the prescribing physicians were not adequate, accurate, or clear, and were ambiguous and intentionally misleading.

50.    Defendants had a continuing duty to warn the prescribing physicians and Plaintiff's decedent of the dangers associated with VIOXX.

51.    As a direct and legal result of Defendants' failure to warn, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death.  Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

WHEREFORE, the Plaintiff demands judgment against Defendants for compensation and damages, plus interest and costs.

### COUNT V
### FRAUDULENT/NEGLIGENT MISREPRESENTATION

52.    Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

53.    Defendants, having undertaken the manufacturing, marketing, prescription dispensing, distributing and promotion of VIOXX owed a duty to provide complete and accurate information regarding VIOXX to Plaintiff's decedent, her physicians, and anyone else

14

Defendants knew or should have known would ingest or prescribe VIOXX.

54.    Defendants misrepresented material facts regarding the safety and efficacy of VIOXX, and failed to inform Plaintiff's decedent, the public and Plaintiff's decedent prescribing physician of these material facts.

55.    Defendants fraudulently and/or negligently misrepresented to Plaintiff's decedent physicians, the FDA, and the general public that VIOXX was safe and effective, that the benefits of taking VIOXX outweighed any risks, and/or fraudulently and/or negligently misrepresented and concealed safety and effectiveness information regarding the product, including but not limited to VIOXX's propensity to cause serious physical harm. The continuous and ongoing course of action constituting fraudulent and/or negligent misrepresentation on Plaintiff's decedent started at least as early as 2000, if not earlier, and continued through repeated acts and non-disclosure every year since then throughout the United States and elsewhere.

56.    VIOXX was in fact unsafe and the use of VIOXX posed a risk of injury and death which outweighed the purported benefits of its use, such that injury was in fact caused to Plaintiff's decedent and others.

57.    Defendants made fraudulent and/or negligent misrepresentations regarding adverse information at a time when it knew, or should have known, that VIOXX had defects, dangers, and

15

characteristics that were other than what Defendants had represented to the

prescribing doctors or other dispensing entities, the FDA, and the

consuming public, including Plaintiff's decedent. Specifically,

Defendants misrepresented the following:

    a. It was dangerous to prescribe VIOXX;
    b. VIOXX carried risks of serious, life threatening adverse
       effects;

    58.    The misrepresentations alleged above were perpetuated

directly and indirectly by the Defendants.

    59.    The fraudulent and/or negligent misrepresentations of

Defendants took the form of, among other things, express and implied

statements, publicly disseminated misinformation, misinformation

provided to regulatory agencies, inadequate, incomplete and misleading

warnings about the subject products, failure to disclose important safety

and injury information regarding the products while having a duty to

disclose to Plaintiff's decedent and others such information.

    60.    Defendants knew or should have known that these

representations were misleading at the time they were made or omitted,

and made the representations with the intent or purpose that Plaintiff's

decedent and her physicians would rely on them, leading to the use of

VIOXX by Plaintiff's decedent.

    61.    At the time of Defendants' fraudulent and/or negligent

misrepresentations, Plaintiff's decedent and her physicians were unaware

of the inaccuracy of the statements being made and believed them to be true.

62.   Both Plaintiff's decedent and her physician justifiably relied on and were induced by the misrepresentations and relied on the absence of adverse safety information in the prescription and ingestion of VIOXX.

63.   Defendants had a post-sale duty to warn Plaintiff's decedent and/or her physicians about the potential risks and complications associated with VIOXX in a timely manner.

64.   The misrepresentations by Defendants constitute a continuing tort.

65.   Defendants made the statements and/or omissions with the intention that Plaintiff's decedent and her prescribing physicians or other dispensing entities and the consuming public would rely on such or the absence of such information in selecting VIOXX as a treatment for arthritis and pain management.

66.   As a direct and legal result of the fraudulent and/or negligent misrepresentations of Defendants, the Plaintiff's decedent, Esther Lee Wright, was caused to sustain severe and permanent injuries including an Acute Myocardial Infarction, resulting in death.  Prior to her death, Esther Lee Wright endured great physical pain and suffering and incurred substantial medical expenses.

17

WHEREFORE, the Plaintiff demands judgment against Defendants for compensatory damages, plus interest and costs.

## COUNT VI
## WRONGFUL DEATH

67. The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

68. As a result of consuming VIOXX, Plaintiff's decedent suffered from an acute myocardial infarction, which substantially `contributed to her death on February 8, 2002.

69. Plaintiff's decedent is survived by her family, who by reason of said death have been deprived of society, companionship, comfort, guidance, counsel, and advice of the said Plaintiff's decedent. In addition, the estate of Plaintiff's decedent has incurred reasonable funeral and burial expenses as a result of the death of Plaintiff's decedent.

WHEREFORE, the Plaintiff Jeanette Anderson, as the Representative of the Estate of Esther Lee Wright, demands compensatory and punitive damages, plus interests and costs.

## COUNT VII
## MALICIOUS, WILLFUL, WANTON, AND RECKLESS
## CONDUCT OR GROSS NEGLIGENCE

70. The Plaintiff adopts by reference all of the allegations above, each inclusive, as though fully set forth herein.

18

71.  At least by 2000, the Defendants, or some of them, possessed medical and scientific data indicating that VIOXX posed potentially serious cardiovascular risks and as early as this date the Defendants, or some of them, possessed medical and scientific data indicating that the use of VIOXX was potentially hazardous to the health and safety of Esther Lee Wright and others in her position.

72.  Prompted by pecuniary motives, the Defendants ignored and failed to act upon such medical and scientific data and deprived the public, and particularly the users, from access to said medical and scientific data, thereby depriving them of informed and free choice as to whether or not to consume VIOXX.

73.  The Defendants acted maliciously, willfully, wantonly, recklessly, or with gross negligence, by continuing to market VIOXX with reckless disregard for the health and safety of the Plaintiff's decedent an others users and consumers, knowing the dangerous characteristics and propensities of VIOXX, but still depriving those affected by the dangers from information about those dangers.

74.  Because the Defendants acted maliciously, willfully, wantonly, recklessly, or with gross negligence, in marketing their hazardous product, in ignoring the medical and scientific data which was available to them, and depriving consumers, users, and the general public from that medical and scientific data, the Plaintiff is entitled to punitive damages.

19

## COUNT VIII

### Violation of M.G.L. c.93A

75.     The plaintiff repeats, realleges, and reavers paragraphs one through seventy-four above as if expressly set forth fully hereinafter.

76.     At all relevant times hereto the defendants were engaged in trade or commerce.

77.     The acts of the defendants alleged in Counts I through VII, and as outlined in the Facts, constitute unfair or deceptive acts or practices within the meaning of G.L. c. 93A, §§ 2 and 3, 940 C.M.R. 3.05(1), and 940 C.M.R. 3.16(1) and (2).

78.     The actions of the defendants described herein were performed willfully and knowingly.

79.     As a result of the unfair or deceptive acts or practices described in the Facts, the plaintiff sustained injury including but not limited to the injuries stated in Paragraph 23  above, incorporated herein.

WHEREFORE, the plaintiff, Esther Lee Wright, demands judgment against the defendants in an amount that is fair and reasonable; plus treble such amount as provided by M.G.L. c. 93A, sec. 9(3); plus interest, costs and attorneys' fees to the plaintiff; and award such other relief as this Court deems just and proper.

WHEREFORE, the Plaintiff demands punitive damages in addition to the damages demanded in Counts I-VII.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues.

WHEREFORE, the Plaintiff prays:

1. The judgment enter against the Defendants on all Counts of this Complaint;

2. That Plaintiff be awarded full, fair and complete compensation, for which she is legally entitled;

3. that Plaintiff be awarded all appropriate costs, attorney's fees and interest authorized by law;

4. That the court enter such other relief as is determined just and appropriate.


Respectfully Submitted,

David C. Strouss (BBO#546253)
Marilyn T. McGoldrick,(BBO#561766)
Allyson S. Hauck (BBO#659547)
THORNTON & NAUMES, LLP
100 Summer Street, 30th Floor
Boston, MA 02110
(617)720-1333


Dated: February 23, 2005

21

MAS-20041213
gilmanr

**Commonwealth of Massachusetts**
MIDDLESEX SUPERIOR COURT
Case Summary
Civil Docket

05/10/2005
03:09 PM

## MICV2005-00367
## Anderson, Representative Of The Estate Of Esther Lee Wright v Merck & Company, Inc. et al

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 02/02/2005 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 05/10/2005 | **Session** | L2 - Cv time-stan 2 (3rd fl-Cambridge) | | |
| **Origin** | 1 | **Case Type** | B05 - Products liability | | |
| **Lead Case** | | **Track** | A | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 05/03/2005 | **Answer** | 07/02/2005 | **Rule12/19/20** | 07/02/2005 |
| **Rule 15** | 04/28/2006 | **Discovery** | 03/24/2007 | **Rule 56** | 05/23/2007 |
| **Final PTC** | 09/20/2007 | **Disposition** | 02/02/2008 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Jeanette Anderson, Representative Of The Estate
Of Esther Lee Wright
1219 Pawtucket Boulevard
Active 02/02/2005

**Private Counsel 546253**
David C Strouss
Thornton & Naumes
100 Summer Street
30th floor
Boston, MA 02110
Phone: 617-720-1333
Fax: 617-720-2445
Active 02/02/2005 Notify

**Defendant**
Merck & Company, Inc.
c/o CT Corporation
101 Federal Street
Boston, MA 02110
Served: 04/27/2005
Served (answr pending) 04/27/2005

**Private Counsel 124660**
James J Dillon
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02110-2600
Phone: 617-832-1000
Fax: 617-832-7000
Active 05/10/2005 Notify

**Private Counsel 651516**
Bradley E Abruzzi
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02110-2600
Phone: 617-832-1291
Fax: 617-832-7000
Active 05/10/2005 Notify

**Defendant**
John Doe, Sales Representative For Merck &
Company, Inc.
Served: 04/27/2005
Served (answr pending) 04/27/2005

MAS-20041213

gilmanr

**Commonwealth of Massachusetts**

**MIDDLESEX SUPERIOR COURT**

**Case Summary**

**Civil Docket**

05/10/2005

03:09 PM

## MICV2005-00367

## Anderson, Representative Of The Estate Of Esther Lee Wright v Merck & Company, Inc. et al

| Defendant |
|---|
| Jane  Doe, Sales Representative For Merck & Cmpany, Inc. |
| Served: 04/27/2005 |
| Served (answr pending) 04/27/2005 |

| ENTRIES | | |
|---|---|---|
| **Date** | **Paper** | **Text** |
| 02/02/2005 | 1.0 | Complaint & civil action cover sheet filed |
| 02/02/2005 | | Origin 1, Type B05, Track A. |
| 02/23/2005 | 2.0 | First Amended Complaint of Jeanette Anderson, Representative Of The Estate Of Esther Lee Wright reflecting an additional count |
| 04/27/2005 | 3.0 | SERVICE RETURNED:  Merck & Company, Inc.(Defendant) in hd on 04/20/05 |
| 04/27/2005 | | SERVICE RETURNED: John Doe, Sales Representative For Merck & Company, Inc.(Defendant) in hd on 04/20/05 |
| 04/27/2005 | | SERVICE RETURNED: Jane Doe, Sales Representative For Merck & Cmpany, Inc.(Defendant) in hd on 04/20/05 |
| 05/10/2005 | 4.0 | Case REMOVED this date to US District Court of Massachusetts  by deft Merck & Co, Inc |
| 05/10/2005 | | ABOVE ACTION THIS DAY REMOVED TO US DISTRICT COURT |